# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 13-cr-00227 |
| | ) | |
| VERNON HAWKINS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S REDACTED MEMORANDUM IN AID OF SENTENCING

/s/  William E. Lawler, III
William E. Lawler, III
D.C. Bar No. 398951
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037-1701
(202) 639-6500
(202) 639-6604 (facsimile)
wlawler@velaw.com

Carla Jordan-Detamore
D.C. Bar No. 1026531
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037-1701
(202) 639-6590
(202) 478-0744 (facsimile)
cjordan-detamore@velaw.com

**ATTORNEYS FOR DEFENDANT VERNON HAWKINS**

# TABLE OF CONTENTS

I.  The Appropriate Guidelines Range for Mr. Hawkins is 0 to 6 Months.............................2

    a.  The Applicable Guideline is Section 2B1.1(a)(2)....................................................2

    b.  The Cross-Reference Provision Under Section 2B1.1(c)(3) is Inapplicable ..........3

        i.  The Count of Conviction Must Establish the Elements of
            Obstruction of Justice ...................................................................................4

        ii. Mr. Hawkins' Information Does Not Establish All the Elements of
            Obstruction of Justice ...................................................................................7

        iii. Mr. Hawkins' "Broader" Conduct Does Not Establish All the
            Elements of Obstruction of Justice ............................................................13

    c.  Acceptance of Responsibility .................................................................................14

II. Personal History and Characteristics, and the Nature and Circumstances of the
    Offense .............................................................................................................................16

    a.  The Nature and Circumstances of the Offense .......................................................17

    b.  Mr. Hawkins' Personal History and Characteristics..............................................18

    c.  Mr. Hawkins' Advanced Age, in Combination with Serious Mental and
        Physical Health Conditions Warrant a Non-Custodial Sentence...........................24

    d.  The Requested Sentence Is Sufficient, But Not Greater than Necessary, to
        Satisfy the Purposes of Punishment.......................................................................28

III. The Obstruction Enhancement Does Not Apply .............................................................29

    a.  ███████████████████████████████████.............................................31

    b.  ██████ Revised Testimony Lack Sufficient Indicia of Reliability....................33

        i.  ██████ is Not Credible ...........................................................................33

            1.  ██████ has Strong Motives to Curry Favor with the
                Government...................................................................................33

            2.  ██████ Statements are Inconsistent ............................................36

            3.  ██████ has Three Prior Felony Convictions for Crimes of
                Dishonesty...................................................................................37

ii.      █████'s Description of Mr. Hawkins' Involvement is Substantially
                Uncorroborated .......................................................................................37

        c.      The Government Has Not Satisfied Its Burden Under the Law for the
                Obstruction Enhancement.......................................................................38

IV.    Conclusion .........................................................................................................42

# TABLE OF AUTHORITIES

## Cases

*Arthur Andersen LLP v. United States*,
    544 U.S. 696 (2005) ............................................................................ 9, 10, 11, 12

*In re Sealed Case*,
    686 F.3d 799 (D.C. Cir. 2012) ................................................................................ 7

*Kimbrough v. United States*,
    552 U.S. 85 (2007) ................................................................................................ 25

*Ramsey v. United States Parole Comm'n*,
    82 F. Supp. 3d 293 (D.D.C. 2015) .......................................................................... 7

*United States v. Aguilar*,
    515 U.S. 593 (1995) ...................................................................................... 13, 14

*United States v. Bah*,
    439 F.3d 423 (8th Cir. 2006) .............................................................................. 4, 5

*United States v. Davis*,
    183 F.3d 231 (3d Cir. 1999) ................................................................................ 10

*United States v. Doss*,
    630 F.3d 1181 (9th Cir. 2011) ............................................................................. 11

*United States v. Eaton*,
    784 F.3d 298 (6th Cir. 2015) ............................................................................... 12

*United States v. Farrell*,
    126 F.3d 484 (3d Cir. 1997) ................................................................................ 10

*United States v. Garcia*,
    590 F.3d 308 (5th Cir. 2009) ................................................................................. 4

*United States v. Genao*,
    343 F.3d 578 (2d Cir. 2003) .............................................................. 4, 5, 6, 7, 11

*United States v. Gibson*,
    155 F.3d 844 (7th Cir. 1998) ............................................................................... 41

*United States v. Griffith*,
    No. 2:14cr00118, 2015 WL 3891596 (S.D.W. Va. June 24, 2015) ................................ 4, 5, 6

*United States v. Gurr*,
    471 F.3d 144 (D.C. Cir. 2006) ............................................................................. 12

*United States v. Harvey,*
    791 F.2d 294 (4th Cir. 1986) ............................................................... 7

*United States v. Khatami,*
    280 F.3d 907 (9th Cir. 2002) ............................................................... 12

*United States v. Kim,*
    95 Fed. Appx. 857 (9th Cir. 2004) ....................................................... 4

*United States v. Manfre,*
    368 F.3d 832 (8th Cir. 2004) ............................................................... 41

*United States v. Manfre,*
    456 F.3d 871 (8th Cir. 2006) ............................................................... 41

*United States v. Monroe,*
    990 F.2d 1370 (D.C. Cir. 1993) .......................................................... 31

*United States v. Morrison*,
    98 F.3d 619 (D.C. Cir. 1996) .......................................................... 9, 12

*United States v. Napoli*,
    54 F.3d 63 (2d Cir. 1995) ..................................................................... 5

*United States v. Ralph*,
    No. 08-40051-01-SAC, 2008 WL 4911151 (D. Kan. Nov. 13, 2008) ... 5

*United States v. Thompson,*
    962 F.2d 1069 (D.C. Cir. 1992) .......................................................... 31

*United States v. Veal*,
    153 F.3d 1233 (11th Cir. 1998) ........................................................... 13

**Statutes**

18 U.S.C. § 1001 ................................................... 1, 2, 4, 5, 6, 18, 36

18 U.S.C. § 1503 ................................................................... 6, 8, 14

18 U.S.C. § 1512 ......................................................................... 10

18 U.S.C. § 1512(b) ............................................................ 8, 9, 10, 11, 12

18 U.S.C. § 1512(b)(1) ........................................................... 6, 9, 14

18 U.S.C. § 1512(b)(3) ........................................................ 9, 11, 12, 13, 14

18 U.S.C. § 1512(c)(2) ................................................................ 6, 8, 9

iv

18 U.S.C. § 1515(A) ...................................................................................................... 8

18 U.S.C. § 2421 .......................................................................................................... 36

18 U.S.C. § 2422 .......................................................................................................... 36

18 U.S.C. § 3551 .......................................................................................................... 25

18 U.S.C. § 3553(a) ......................................................................................... 1, 17, 26, 29

18 U.S.C. § 3553(a)(2) ............................................................................................. 25, 29

18 U.S.C. § 922(g) ................................................................................................... 35, 36

26 U.S.C. § 7201 .................................................................................................... 36, 37

D.C. Code § 22-2705(a)(2)(C) ....................................................................................... 35

D.C. Code § 22-2707(a) ................................................................................................ 35

D.C. Code § 22-2711 .................................................................................................... 35

D.C. Code § 22-3052 .................................................................................................... 35

D.C. Code § 22-404 ...................................................................................................... 35

D.C. Code § 22-407 ...................................................................................................... 35

**INTRODUCTION**

Vernon Hawkins will appear before this Honorable Court for sentencing on May 6, 2016, having pled guilty to a single-count Information alleging making false statements in violation of 18 U.S.C. § 1001.  Mr. Hawkins will be seventy-seven years old on the day of his sentencing. He is a lifelong resident of the District of Columbia who has no prior criminal record and has otherwise lived an exemplary life devoted to family, charity, and public service.   He unfortunately suffers from a number of serious physical and mental health issues ███████ ████████████████████.  Mr. Hawkins admitted responsibility for making false statements and an appropriate analysis under the Federal Sentencing Guidelines yields an adjusted base offense level of 4 and a concomitant guideline of 0-6 months.  Under the totality of circumstances present in this case, the defense submits this Memorandum in support of a sentence of 12 months of probation and no fine.  This sentence would be "sufficient, but not greater than necessary," to comply with the goals of sentencing established by Congress.  18 U.S.C. § 3553(a).

The government charged Mr. Hawkins with making false statements, but in effect it seeks to have him sentenced for obstructing justice.  But the Guideline cross-reference provision on which the government relies does not apply because conduct supporting an obstruction of justice charge is not alleged in the Information.  Even if the government were allowed to look beyond the four corners of the Information—and it is not—it still comes up short.  The so-called "broader" conduct which the government describes does not adequately allege the essential elements of an obstruction of justice charge.  The Court should disregard the largely extraneous materials raised by the government and sentence Mr. Hawkins under the Guideline applicable to a § 1001 charge.

The Memorandum also responds to the Government's fanciful argument that Mr. Hawkins obstructed justice when stating he did "not recall" that ██████████ made payments to "██████ close relative." This Court should reject the government's remarkable reliance for this enhancement based upon the dubious and constantly changing testimony of ██████████, who by his own admission committed a series of criminal offenses involving the worst sort of moral turpitude.

The appropriate Guidelines range is 0 to 6 months. In light of his age, lack of criminal history, serious health problems, and service to the community, we ask the Court to sentence Mr. Hawkins to twelve months of probation and no fine.

I.      The Appropriate Guidelines Range for Mr. Hawkins is 0 to 6 Months

     a.      The Applicable Guideline is Section 2B1.1(a)(2)

Having pled guilty to making false statements in violation of 18 U.S.C. § 1001, Mr. Hawkins should be sentenced under the sentencing guideline provision applicable to that offense. Section 2B1.1(a)(2) yields a base offense level of 6 before applying the acceptance of responsibility credit, and a Guideline range of 0 to 6 months.

The sentencing guidelines should be calculated as follows:

| | |
|---|---|
| Base Offense Level  - U.S.S.G. § 2B1.1(a)(2) | 6 |
| Acceptance of Responsibility – U.S.S.G. § 3E1.1 | -2 |
| **Total Offense Level** | **4** |

At offense level 4, with a criminal history category of I, the Guideline range would be 0 to 6 months in Zone A. For the reasons set out in this Memorandum, we ask the Court to sentence Mr. Hawkins to 12 months of probation and no fine.

b.      The Cross-Reference Provision Under Section 2B1.1(c)(3) is Inapplicable

The Presentence Investigation Report ("PSR") incorrectly applies the Sentencing Guideline of § 2J1.2, by asserting that Mr. Hawkins' false statement involved obstruction of justice, thus resulting in a base offense level of 14, but this ignores the stringent and exacting requirements for the cross-reference provision.  It is not enough to simply state that § 2J1.2 applies because "defendant's actions in the instant offense were obstructive in nature."  PSR at 28.  The Sentencing Guidelines require a more precise legal analysis:  does "the conduct set forth in the count of conviction establish[] an offense specifically covered by another guideline"?  U.S. Sentencing Guidelines Manual § 2B1.1(c)(3).  Here, it does not.  The cross-reference provision under Section 2B1.1(c)(3) does not apply because the Information does not establish all the elements of obstruction of justice.  The appropriate, and indeed, only permissible provision of the U.S. Sentencing Guidelines in Mr. Hawkins' case is Section 2B1.1(a)(2).

Consideration should be given to the fact that it was the government's decision to pursue a plea for false statements.  The policy statements in the United States Attorneys Manual provide that, "the defendant should be required to plead to a charge . . . [t]hat is the most serious readily provable charge consistent with the nature and extent of his/her criminal conduct."  U.S. Dep't of Justice, United States Attorneys' Manual 9-27.430 (2014), *available at* https://www.justice.gov/usam/usam-9-27000-principles-federal-prosecution#9-27.300.   The government offered, and Mr. Hawkins accepted, a plea for the offense of making false statements.  The government had the ability to, and by its own principles of federal prosecution was supposed to, pursue a plea to the most serious readily provable offense.  The obvious inference is that the government did not consider an obstruction of justice offense to be readily provable.  If, as the government now contends, Mr. Hawkins' conduct establishes the elements of

the offense of obstruction of justice, then it should have required a plea for obstruction of justice. It did not so do.  Having agreed to a § 1001 plea, it should not in effect seek to sentence Mr. Hawkins under the obstruction of justice guidelines.

> i.   The Count of Conviction Must Establish the Elements of Obstruction of Justice

The cross-reference provision under Section 2B1.1(c)(3) "is applicable only if the conduct alleged in the count of the indictment of which the defendant is convicted establishes the elements of another offense." *United States v. Genao*, 343 F.3d 578, 583 (2d Cir. 2003); *see also United States v. Garcia*, 590 F.3d 308, 316 (5th Cir. 2009) (Section 2B1.1(c)(3) can be applied "only if the application of that provision is supported by the conduct alleged in the indictment"); *United States v. Bah*, 439 F.3d 423, 427 (8th Cir. 2006) (same); *United States v. Kim*, 95 Fed. Appx. 857, 861 (9th Cir. 2004) (same).

In evaluating whether sufficient facts are present, courts look to the conduct described in the pleading containing the count of conviction—and only to that conduct.  In this case, as with many other guilty pleas, that pleading is the Information, and the Court cannot rely on material found outside of the Information.  *See United States v. Griffith*, No. 2:14cr00118, 2015 WL 3891596, at *14-15 (S.D.W. Va. June 24, 2015) (in considering the cross-reference issue, the court looked only to the Information and not the broader "Stipulation of Facts"); *United States v. Ralph*, No. 08-40051-01-SAC, 2008 WL 4911151 (D. Kan. Nov. 13, 2008) (looking to Information as the only relevant factual basis for considering cross-reference issue and denying its applicability, despite the existence of additional details in the plea agreement); *Bah*, 439 F.3d at 428 ("Thus while the ICE agent's testimony may have established Bah's violation of a more serious offense than a violation of § 1001, the conduct set forth in the count of conviction does

not establish that Bah committed an offense punishable pursuant to § 2L2.1."); *Genao*, 343 F.3d at 583 (citing *United States v. Napoli*, 54 F.3d 63 (2d Cir. 1995)).

The government's rather breezy assertion that the Court should "consider offense conduct more broadly" than just the indictment or information (March 7, 2016, Letter at 13) is not supported.  The government did not cite to a single case where the defendant pled guilty and where the court, in considering application of a cross-reference, examined extraneous offense conduct not contained in the information.

The presence of a statement somewhere else in a case file is not enough – more rigor and precision is required.  In *Griffith*, the record was essentially the same as the one here.  There was an information, a plea agreement and a statement of facts.  (In *Griffith*, the document was titled "Stipulation of Facts").  In considering the cross-reference issue, however, the *Griffith* court, looked only to the Information and did not consider the statement of facts.  *See also*, *Ralph*, 2008 WL 4911151.

In *Griffith*, the court rejected the government's argument that the charging language in the Information "need not specifically list out each element of the related offense," and declined to apply the cross-reference provision under Section 2B1.1(c)(3).  *Griffith* at *12.  Not only does the plain language of Section 2B1.1(c)(3) make clear that the Information must establish all elements of the offense for the cross-reference to apply, but also the Sentencing Commission amended that provision of the Sentencing Guidelines to make clear that the cross-reference does not apply if the count of conviction "establishes an offense *more aptly covered* by another guideline."  *Id.* at *13 (citing *Genao*, 343 F.3d at 583).  Thus, the court expressly rejected the government's position that the cross-reference can apply "if the charging language implicates

another offense, but does not establish the elements of that offense," because "this lesser requirement would likely result in courts throughout the country applying different standards as to the level of information a count of conviction must provide to trigger the Section 2B1.1(c)(3) cross reference." *Id*. at *14.

Unless the Information contains facts establishing all of the elements of obstruction of justice under 18 U.S.C. § 1503, 18 U.S.C. §§ 1512(b)(1), (b)(3), or 18 U.S.C. § 1512(c)(2), the cross-reference provision cannot apply, and Mr. Hawkins should be sentenced in accordance with the guideline for a § 1001 violation, Section 2B1.1(a)(2). Even if the Court were not limited to the Information (and it should be) and could look to broader conduct to establish the elements of obstruction of justice, the result is no different because Mr. Hawkins' so called "broader" conduct does not establish the elements of the obstruction of justice offenses.

As the Court evaluates whether Mr. Hawkins' conduct in the count of conviction establishes an obstruction of justice offense, it is important to remember that the government is bound by the words that actually appear in the pleading containing the count of conviction, rather than inferences. To argue that there are permissible inferences beyond the literal words of the pleading containing the count of conviction, in this case the Information, the government would be arguing, in effect, that some words are ambiguous and that different meanings could be drawn from them.

We do not believe that there is any ambiguity in the Information, but if there was, any ambiguity would have to be construed against the government because the Information, along with the rest of the plea documents, was drafted by the government. *See In re Sealed Case*, 686 F.3d 799, 802 (D.C. Cir. 2012), (ambiguity in a plea agreement is construed against the drafting

party, *i.e.* the government); *Ramsey v. United States Parole Comm'n*, 82 F. Supp. 3d 293, 303 (D.D.C. 2015) (any ambiguities in plea agreement construed against the government); *United States v. Harvey*, 791 F.2d 294 (4th Cir. 1986) ("[C]onstitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant…for imprecisions or ambiguities in plea agreements.").

      ii.    <u>Mr. Hawkins' Information Does Not Establish All the Elements of Obstruction of Justice</u>

The government has the burden of proving that Mr. Hawkins' conduct establishes all of the elements of applicable obstruction of justice statutes by a preponderance of the evidence. *Genao*, 343 F.3d at 584.  It cannot simply rest on bald and unsupported assertions that conduct is "obstructive."   In arguing that the conduct constitutes obstruction of justice, the government is bound by the actual words in the pleading containing the count of conviction.   The cross-reference provision under Section 2B1.1(c)(3) is inapplicable because the Information to which Mr. Hawkins pled guilty fails to establish all the elements of obstruction of justice.

The Information states that Mr. Hawkins falsely told FBI special agents that he (a) "did not know of anyone asked or told to go out of town who had been involved with the ▮▮ Campaign or the ▮▮▮▮▮▮-funded GOTV effort in support of the ▮▮ Campaign;" (b) "never requested for anyone ▮▮▮▮ to leave town so that they could not come to the U.S. Attorney's Office or speak with federal agents;" and (c) "he did not help or assist with sending anyone ▮▮▮ out of town so they would not be able to speak with federal agents in the FBI's investigation of the ▮▮▮▮▮-funded GOTV effort in support of the ▮▮ Campaign." Information ¶ 8(a)-(c).

In response to the draft PSR, the government alleged that Mr. Hawkins' conduct in his count of conviction violated Section 1503 (influencing or injuring officer of juror generally), 18 U.S.C. § 1512(b)(1) (tampering with a witness, victim, or an informant), and 18 U.S.C. § 1512(c)(2) (tampering with a witness, victim, or an informant) because he had knowledge of the pending federal investigation when he made false statements to the FBI.  All three statutes, however, require the existence of an "official proceeding," which in these circumstances, would be "a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury."  18 U.S.C. § 1515(A).

Although the government argued in its response to the draft PSR, that Mr. Hawkins violated Section 1503 because his false statements were made in attempt to influence the federal grand jury investigation, when considering Mr. Hawkins' Information alone, and not the Statement of Offense, as is the proper analysis per the above discussion, there is no mention of a grand jury proceeding, knowledge of a grand jury proceeding, or an attempt to influence the grand jury proceeding at the time of the August 2012 interview.

Similarly, the government stated in a conclusory fashion that Mr. Hawkins' discussion with ███████ violated Sections 1512(b)(1) and 1512(c)(2).  The government did not explain, however, which official proceeding would have been impeded.  The Information nowhere states that a federal grand jury investigation was pending at the time of the discussion with ██████, nor does it state that Mr. Hawkins had knowledge of the grand jury proceeding at the time of the discussion.  The government has not shown that Mr. Hawkins either  1) intended to "influence, delay, or prevent the testimony of any person in an official proceeding," or 2) "otherwise

obstructs, influences, or impedes any official proceeding, or attempts to do so."  18 U.S.C. §§ 1512(b)(1), (c)(2).

The government also argued in response to the draft PSR that Mr. Hawkins' conduct in his count of conviction establishes a violation of Section 1512(b)(1) and 1512(b)(3) (tampering with a witness, victim, or an informant).  Sections 1512(b)(1) and (b)(3) criminalize a defendant who "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engaging in misleading conduct toward another person, with intent to

- influence, delay, or prevent the testimony of any person in an official proceeding, 18 U.S.C. §§ 1512(b)(1)   [or]
- hinder, delay, or prevent the communication to a law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense."  18 U.S.C. §§ 1512(b)(3).

"Corruptly" refers to conduct that is "wrongful, immoral, depraved, or evil." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005).  In the context of Section 1512(b), acting "corruptly" has been defined by the D.C. Circuit as "persuading one to violate his legal duty."  *United States v. Morrison*, 98 F.3d 619, 622 (D.C. Cir. 1996) (ruling that defendant tried to "corrupt" a potential witness by asking her to "violate her legal duty to testify truthfully in court"); *see also United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999) *amended*, 197 F.3d 662 (3d Cir. 1999) (concluding that defendant's conduct met the definition of corrupt persuasion where "Davis urged Vittorio to violate his legal duty not to kill Sabol or aid in Sabol's death.").

Encouraging another to do something that might impede or slow down an investigation in and of itself is not inherently "corrupt."  As the *Arthur Andersen* court noted, "persuading a person with intent to cause that person to withhold testimony or documents from a government

proceeding is not inherently malign," pointing to examples in which a person might encourage one to invoke his right against self-incrimination or "a wife who persuades her husband not to disclose marital confidences" as permissible instances in which one might encourage another to withhold information from a government investigation.  544 U.S. at 704; *see also Davis*, 183 F.3d at 249 (interpreting "the inclusion of 'corruptly' in § 1512(b) as necessarily implying that an individual can 'persuade' another not to disclose information to a law enforcement official with the intent of hindering an investigation without violating the statute, i.e., without doing so 'corruptly.'  Thus, more culpability is required for a statutory violation than that involved in the act of attempting to discourage disclosure in order to hinder an investigation."); *United States v. Farrell*, 126 F.3d 484, 489 (3d Cir. 1997) (concluding that "a noncoercive attempt to persuade a co-conspirator who enjoys a Fifth Amendment right not to disclose self-incriminating information about the conspiracy to refrain, in accordance with that right, from volunteering information to investigators" was not corrupt persuasion under § 1512).  To sink to the level of "corrupt" conduct, this encouragement must be offered "knowingly and dishonestly, with the specific intent to subvert or undermine the integrity of a proceeding." *Arthur Andersen*, 544 U.S. 704-06.

In addition, for a conviction under Section 1512(b), the government must prove that a defendant acted not simply "corruptly," but "knowingly…corruptly." *Arthur Andersen*, 544 U.S. at 704-05.  In *Arthur Andersen*, the Supreme Court overturned a conviction under Section 1512(b) because the jury instructions failed to "convey the requisite consciousness of wrongdoing" and instead incorrectly focused exclusively on the term "corruptly" by incorrectly instructing that "even if [the defendant] honestly and sincerely believed that its conduct was lawful, you may find [the defendant] guilty." *Id.* at 706; *United States v. Doss*, 630 F.3d 1181,

1189-90 (9th Cir. 2011), *as amended on reh'g in part* (Mar. 15, 2011) ("knowingly" corrupt requires a showing of "consciousness of wrongdoing" such that conduct such as asking a spouse to withhold testimony "absent some *other* wrongful conduct, such as coercion, intimidation, bribery, suborning perjury, etc." is insufficient to establish corrupt persuasion); *Genao*, 343 F.3d at 585-86 (cross-reference to obstruction of justice could not apply because the indictment did not establish the required specific intent for a violation of §1512(b)(3)).

Importantly, the Information does not allege that Mr. Hawkins knew that ████ was under any legal obligation to speak to federal agents at the time.  There are no allegations that (i) ████ was subject to a subpoena to appear to provide testimony before a grand jury, (ii) Mr. Hawkins personally threatened or corruptly persuaded another person to threaten ████ to withhold testimony, or (iii) Mr. Hawkins attempted to persuade ████ to perjure himself by providing false testimony.  As such, Mr. Hawkins did not persuade ████ to violate a legal duty, because no such duty existed.  As *Arthur Andersen* makes clear, simply encouraging another to take *lawful* action that might delay a government investigation is not corrupt.  544 U.S. at 704-07 (overturning conviction under 18 U.S.C. § 1512(b) due to jury instruction that indicated that "it was enough for [the defendant] to have simply impeded the Government's fact finding ability").

The facts set forth in the Information stand in stark contrast with cases in which a defendant attempted to persuade another to violate a legal duty by falsifying testimony or falsifying documents in connection with a government investigation.  *See Morrison*, 98 F.3d at 620 (attempting to persuade witness to lie in court); *United States v. Khatami*, 280 F.3d 907, 915 (9th Cir. 2002) (attempting to persuade potential witnesses to lie to investigators); *United States v. Eaton*, 784 F.3d 298, 304 (6th Cir. 2015) (pressuring deputies to draft false incident reports to

11

be delivered to the FBI); *United States v. Gurr*, 471 F.3d 144, 154 (D.C. Cir. 2006) (attempting to persuade a witness to sign an affidavit with false information).

Apparently recognizing that the facts are not sufficient to show that Mr. Hawkins' knowingly corruptly persuaded ███████, the government argued alternatively that Mr. Hawkins violated Section 1512(b)(3) because he "knowingly. . .engage[d] in misleading conduct toward another person, with the intent to. . .(3) hinder, delay, or prevent" communication with a law enforcement officer.  18 U.S.C. § 1512(b)(3).  In its March 18, 2016 letter to the Probation Officer, the government argued that Mr. Hawkins violated Section 1512(b)(3) because he engaged in "misleading conduct toward another person" by making the false statement to the FBI special agents.  Thus, the government argued that, even where there is no third party such as a witness to relay information to federal law enforcement officers, Mr. Hawkins should be held liable for "tampering with a witness, victim, or an informant."

The government cites *United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998) as support for its assertion that "another person" under Section 1512(b)(3) can include law enforcement officers.  Although the government is correct that *Veal* contained a lengthy discussion on the inclusion of law enforcement offices in the definition of "another person," *Veal* made clear that Section 1512(b)(3) is concerned about the use of a third party as a conduit for false information, and does not hold that a defendant can be in violation for directly making false statements to federal law enforcement officers.  The court in *Veal* was specifically concerned that the defendants had created false and misleading information, which they relayed to state investigators with knowledge that the information would be relayed to other investigators.  *Veal*, 153 F.3d at 1247 (noting the court's occupation with defendants' use of "unwitting third parties or entities to deflect the efforts of law enforcement agents in discovering the truth.").  Therefore,

12

*Veal* does not stand for the proposition that a defendant can violate Section 1512(b)(3) without using a third party as a conduit for information.  The government cites no case from this Circuit finding a violation of Section 1512(b)(3) without using a third party as a conduit for information.

iii.   Mr. Hawkins' "Broader" Conduct Does Not Establish All the Elements of
        Obstruction of Justice

Even if the Court were to evaluate the cross-reference provision under the government's legally erroneous theory that it can rely on Mr. Hawkins' "broader" conduct beyond the Information, the government still cannot establish the elements of obstruction of justice.

The government might argue that Mr. Hawkins' conduct, as described in the Statement of Offense, violates Section 1503 because he knew of the pending federal investigation when he made false statements to the FBI.  In *United States v. Aguilar*, the Supreme Court rejected a similar argument, holding that there was no violation of Section 1503 for false testimony given to an investigating agent "who has not been subpoenaed or otherwise directed to appear before the grand jury."  515 U.S. 593, 600-01 (1995).  Similarly, although the government states that Mr. Hawkins' statements were "made in an attempt to influence the federal grand jury investigation," there are no facts established in the Statement of Offense that the FBI agents "acted as an arm of the grand jury, or indeed that the grand jury had even summoned the testimony of these particular agents."  *Id.*  Despite the Supreme Court's acknowledgement that Aguilar knew there was a pending proceeding before the grand jury, the Court ruled that conduct of testifying falsely to an investigating agent "falls on the other side of the statutory line from that of one who delivers false documents or testimony to the grand jury itself" and as such was not a violation of Section 1503.  *Id.*   As such, the government cannot establish that Mr. Hawkins violated Section 1503.

13

Next the government might argue that Mr. Hawkins' conduct, as described in the Statement of Offense, violates Section 1512(b)(1) and 1512(b)(3) because of Mr. Hawkins' "attempt[] to persuade [a witness] to leave town for an extended period of time, so that [the witness] would be unavailable to speak with federal agents in the FBI's investigation." March 7, 2016 Letter at 13. Even if the Court could consider "broader" conduct, the Statement of Offense does not contain sufficient facts to find that Mr. Hawkins knowingly corruptly persuaded █████████ because ██████████ had no legal duty to voluntarily speak to investigators.

Furthermore, if the Court were to consider Mr. Hawkins' broader conduct, the Court likewise would have to consider that ████████ was already planning on being out of town regardless of his conversation with Mr. Hawkins, and that Mr. Hawkins actually suggested that ████████ contact the office and make arrangements to see investigators and instructed ████████ to tell the truth. Hawkins Arr. & Plea Tr. 34:12-15, August 13, 2013 ████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████.

c.    Acceptance of Responsibility

The PSR correctly credits Mr. Hawkins with acceptance of responsibility. PSR ¶ 38. Mr. Hawkins has taken complete responsibility for his actions both orally and in writing. Mr. Hawkins accepted responsibility for his actions when he stood up and pled guilty before this Court on August 13, 2013. He will do so again at his sentencing on May 6, 2016. He is devastated that he put himself in this situation, but he has never even suggested that anyone else is to blame for his false statement to investigators.

He has acknowledged that on August 16, 2012, he made false statements to FBI special agents, and he understands that his false statement could have initially hindered the federal investigation regarding the illegal campaign finance activities of others.  The record shows that, apart from that false statement, Mr. Hawkins has been truthful to the best of his ability.  As reflected in the PSR, Mr. Hawkins has tried to correct his mistake of not being fully transparent with the investigators.  PSR ¶ 58.  His memory may not have included everything the government hoped it would, or wanted it to, but Mr. Hawkins tried his best in subsequent meetings with the government to answer all of their questions to the best of his recollection.  He hopes that his public acceptance of responsibility, and his cooperation with federal authorities to the extent his memory allowed, will allow him to continue on the path of making positive differences.  *Id.*

Mr. Hawkins' acceptance of responsibility and remorse for his actions is further demonstrated in the letters of support provided by his friends and family members.  As described by C. Ayo Bryant,

> I know that Vernon regrets the misguided action he took from the depths of his soul.  He has told me this himself, expressing his deep remorse for the worse [sic] mistake he has ever made in his life.  The pain of that misjudgment haunts him because of his personal values and commitment to his family and the community he loves so deeply.  I have worked in the trenches with Vernon for nearly thirty years, in dark and brighter times.  This is a bitter drink from the well for him.  He has truly learned from this experience and deserves to be able to move forward with his life.

Ex. B; *see also* Ex. C (A. Graves) ("I can tell you without a doubt that Mr. Hawkins is incredibly remorseful for what he has done.  He has expressed this to me on several occasions and shortly after the incident he sent me and other friends a personal letter of apology."); Ex. D (L. Boyd) ("Mr. Hawkins is extremely apologetic for his error"); Ex. E (R. Jacobs) ("I know the pain and

sorry this situation has caused him.  I know he is remorseful and will not make this mistake again.").

In the government's response to the draft PSR, it argued that because the obstruction of justice enhancement under §3C1.1 allegedly applies, Mr. Hawkins should not receive credit for acceptance of responsibility.  The government passes over Mr. Hawkins' written statement accepting responsibility for making false statements to the government regarding his discussion with ████████and rather argued that the sole reason Mr. Hawkins should not receive credit for acceptance of responsibility is because he has allegedly further obstructed justice.  The argument is circular and lacks a factual predicate.  As outlined below, the government has not shown that Mr. Hawkins obstructed justice by stating that he could not recall the payment from ████████ to ██████Close Relative.  Mr. Hawkins is entitled to the acceptance of responsibility credit.

II.    <u>Personal History and Characteristics, and the Nature and Circumstances of the Offense</u>

In fashioning an appropriate sentence, a court considers factors such as the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1).  As described above, we believe that Mr. Hawkins' offense level is 4 with a guidelines range of 0 to 6 months.  Within that range, given the nature and circumstances of the offense, Mr. Hawkins' personal history and characteristics, probation would be an appropriate sentence.  If, however, the Court applies the guidelines from the PSR of 10 to 16 months, the application of a variance resulting in probation would still be appropriate.  If, alternatively, the Court relies on a higher Guidelines calculation, the Court can render a fair and appropriately significant sentence by sentencing Mr. Hawkins to a non-custodial sentence due to Mr. Hawkins' age and serious medical conditions by applying a downward departure in accordance with U.S.S.G. §§ 5H1.1; 5H1.3; and 5H1.4.

16

a.    The Nature and Circumstances of the Offense

While Mr. Hawkins acknowledges that his actions were wrong, the Court should consider the context of his actions.  Even if the Court were to consider Mr. Hawkins' conduct under the cross-reference provision, sentencing him for obstruction of justice, it is clear that Mr. Hawkins was not the mastermind behind the idea to send █████ out of town, nor did he provide his own funds to do so – rather Mr. Hawkins received instructions and money from another and carried out his assignment.

We hope the Court will not blur Mr. Hawkins' offense of conviction of making false statements with the independent shadow campaign activities of defendants █████, Harris, Calhoun, and Straughter who pled guilty to much more serious offenses including conspiracy to make contributions in the name of another person, contributions in the name of another, unlawful corporate contributions, and conspiracy to violate IRS laws, federal campaign finance laws, and the District of Columbia's campaign finance laws.  We expect that the government may present a great deal of information about illegal campaign activities, but Mr. Hawkins was not charged with, nor did he plead guilty to, any such offenses.

Except for the present offense of making false statements in violation of 18 U.S.C. § 1001, Mr. Hawkins has lived a long and law-abiding life.  Mr. Hawkins has accepted full responsibility for his actions in this case and has pled guilty.  Mr. Hawkins has expressed remorse over his actions and recognizes that his actions have disappointed those whose opinions and relationships he values most – his family, friends, fellow parishioners, and the community that he worked hard his whole life to serve.  PSR ¶ 58.  The individual most harmed by Mr. Hawkins' false statement is Mr. Hawkins himself.  The nature of this offense, and the consequences it has already caused, does not require a more severe sentence than probation.

b.      Mr. Hawkins' Personal History and Characteristics

While a defendant's criminal conduct and criminal history generally are the starting point for a sentencing determination, a defendant's specific characteristics should be taken into account when fashioning an appropriate and fair sentence. *See* Sentencing Guidelines for United States Courts; Notice, 75 Fed. Reg. 27388, 27391 (May 14, 2010). Mr. Hawkins' conduct cannot be considered in isolation, but rather as part of a whole life, one described best by the family, friends, former colleagues, and fellow parishioners who submitted letters to this Court explaining that the misconduct that brings Mr. Hawkins here now is a serious, but isolated mistake, by a man whose life has otherwise been marked by his integrity, professionalism, caring, and generosity. *See* Exs. B-III. Mr. Hawkins' own life and the lives of those he cares about most deeply have been forever altered by this case.

Mr. Hawkins was born in Washington, D.C. on May 6███. He grew up in a caring and supportive environment that instilled a sense of social responsibility and determination in Mr. Hawkins, allowing him to escape some of the more oppressive aspects of racial tension over the years and encouraging him to give back to the community. PSR ¶ 77.

After graduating from West Virginia State University, Mr. Hawkins obtained training in program management and development, rehabilitation, addiction counseling, and organizational management. As reflected in the over 50 letters of support written on his behalf, attached to this Memorandum as Exhibits B-III, Mr. Hawkins' "mission has been and continues to be to make a positive difference in the lives of the disenfranchised, the lost, the least, and the forgotten." *See* Ex. B (C. Bryant).

Mr. Hawkins' employment history reflects a man who worked extensively and tirelessly in the arenas of civic engagement, education, civil rights and social justice, including helping to organize the 1963 March on Washington.  His efforts also have encompassed social work, criminal justice, public health, disability rights, positive youth development, leadership development, and family strengthening.  After starting his career at the D.C. Department of Corrections as a work release coordinator, Mr. Hawkins became the chief employment and training officer with the D.C. Department of Rehabilitation Services, Acting Commissioner of the D.C. Commission on Social Services, and later the Deputy Director of the Department of Human Services for the District of Columbia.  He also worked with the Women's Release Training Program at the D.C. Department of Corrections and with the Voter Fund for the National Association for the Advancement of Colored People in the District of Columbia.

Not only does Mr. Hawkins' employment history reflect his unwavering dedication to helping others, but Mr. Hawkins has spent innumerable hours volunteering in civil rights, community service, charitable, and religious organizations.  Consistent with his career in government service, Mr. Hawkins' volunteer work included organizations focused on rehabilitation such as the National Association of Non-White Rehabilitation Works, National Association of Multi-cultural Concerns, National Rehabilitation Association, the University of the District of Columbia Department of Social Work, and the University of the District of Columbia Master's Degree in Rehabilitative Counseling Program Advisory Board.  PSR ¶ 97. He also worked with religious and secular organizations aimed at improving the lives of those in his local community such as the Anacostia Coordinating Council, the Spirit Anacostia Health and Wellness Inc., Union Temple Baptist Church, Union Temple Community Development Corporation, the United Planning Organization, Anacostia Riverfront Development Company,

Sheridan Station Homebuilder LLC, District of Columbia Blind Vendors Association, the Alliance of Concerned Men, and the YMCA – Metropolitan Area. *Id.*

Mr. Hawkins' friends, former colleagues, fellow parishioners, and family describe Mr. Hawkins as a man who dedicated his life to God, family, and the betterment of his community, a true "servant leader" who has "never sought personal aggrandizement or even acknowledgement of the herculean efforts he invests in each task that he takes on." *See* Ex. B (C. Bryant).

For example, Mr. Hawkins' colleagues at the Department of Corrections extol how Mr. Hawkins was a "dutiful advocate for the inmates," treating the participants in the substance abuse program with respect and dignity, making them believe they could turn their lives around, and helping them avoid recidivism. *See* Ex. F (S. Petty); Ex. G (J. Kelley) ("his unwavering commitment and tireless efforts to effectuate change among the inmate population by creating and implementing Substance Abuse, Violence Prevent, English as a Second Language and Female Offender Programs"); Ex. C (A. Graves); Ex. H (M. Moore); Ex. I (L. Marrero); Ex. J (O. Colón).

Mr. Hawkins' former colleagues in the field of social services applaud his achievements in addressing the needs of people with disabilities and other underserved citizens of the District of Columbia. *See* Ex. K (B. Cartwright) ("the development and monitoring of a corrective action plan in response to a federal program review of the District of Columbia Independent Living Center; coordination of Technology Expo '93 which provided hands-on experience with assistive technology for approximately 200 consumers, service providers, employers, rehabilitation professionals and educators; improved access for citizens with disabilities by facilitating the

establishment of an accessible bus route and crosswalk to the state vocational rehabilitation agency; investigation and negotiation with the Commissioner, agency heads and appointed committee members to reconcile issues of discriminatory practice charges involving individuals with disabilities among taxicab drivers in the District of Columbia"); Ex. L (J. Eisenberg) (pioneering and championing much needed HIV/AIDS services and "mobilizing partnerships with the faith based community and others to increase awareness and provide desperately needed support"); Ex. M (E. Johnson) (helping to establish educational outreach programs for inner city youth, actively participating in D.C.'s "Welfare to Work" project to provide remedial education, skills development, and vocational training, and assisting the University of the District of Columbia in developing a Master's degree program in rehabilitation counseling); Ex. N (C. Chappelle) (providing shelter services for the homeless population); Ex. O (M. Wilson) (implementing one of the first comprehensive service programs for Temporary Assistance for Needy Families in Wards 7 and 8).

Mr. Hawkins' fellow parishioners from Union Temple Baptist Church praise Mr. Hawkins' key leadership in church programming activities such as serving as the chairman of the Board of Trustees, Church Administrator, the chair of the "Invest in You" investment program (leading the church to acquire/develop over 111 apartment dwellings in two years), and his instrumental role in the development of Unifest, a community festival providing entertainment and basic city services to low income and economically challenged residents that grew to become the largest African American cultural festival on the east coast, a tremendous source of pride for the Anacostia community. *See* Ex. B (C. Bryant); Ex. P (W. Wilson); Ex. Q (A. Abdullah); Ex. R (D. Tolliver); Ex. S (W. Jordan).

Mr. Hawkins' friends and community members also highlight Mr. Hawkins' commitment to community organizing in the arena of civil rights and racial justice throughout the decades including helping to organize the 1963 March on Washington and the NAACP's Get Out To Vote Educational Effort (A. Abdullah), the 1995 Million Man March and the 2010 Million Family March (B. Parker); the 2005 Millions More Movement and the 20th Anniversary of the Million Man March (A. Muhammad), and the 50th Anniversary of the March on Washington (L. Boyd).

Mr. Hawkins has focused his life on mentoring youth and providing them with the focus, encouragement, and tools necessary to develop and be impactful in their own work. "Mr. Hawkins has been a guiding light for young professionals who sought to be involved in the struggle for racial justice and equality."  *See* Ex. D (L. Boyd); Ex. K (B. Cartwright) ("igniting my passion to advocate for equity and social justice"); Ex. T (T. Parker)  (serving as the Chairperson on the Board of Directors of the Alliance of Concerned Men, Inc., a youth violence prevention program); Ex. U (B. Cooke) (participating in the Rites of Passage mentoring program for African American Boys); Ex. V (A. Farrakhan) (providing guidance to redirect a former offender to helping those with drug addiction); Ex. W (R. Coates) (supporting her as a single mother by impressing the importance of academics on her two young sons); Ex. X (R. Daniels) (lovingly encouraging and supporting his three godchildren through pre-school, k-12, college and now as young professionals).

Mr. Hawkins also has the support of his relatives, who are proud to call him the patriarch of the extended family, providing necessary guidance and support.

> He has been the comforter when there was death in the family.  The counselor when anyone had an issue.  The provider when anyone needed support.  The

22

peacemaker to ensure everything was harmonious in the family and the negotiator to sort out any difficult situations.  Most importantly he has been the family advisor helping with keeping everything in line and in order.

Ex. Y (M. Perry).  Mr. Hawkins' younger brother, Jeffrey Cobbs, explains how his older brother and mentor Vernon played a key role in providing "guidance as a young teenager regarding the do's and don'ts of life," providing "inspiration and guidance through his involvement in the community and the church," and in inspiring Mr. Cobbs' own children to go to college and obtain advanced degrees.  Ex. Z (J. Cobbs).

Mr. Hawkins' niece, Monica Perry, recounts how her uncle Vernon stepped in to help parent her after the death of her father at the age of nine, fondly recalling him taking pictures at school events, preparing her for high school prom, helping her move into college and move out again upon graduation four years later.   Ex. Y (M. Perry).   Another niece, Renee Jacobs, describes how Mr. Hawkins has acted as a positive role model for the entire family, encouraging college and career development, including supporting his nephew Keith by helping him obtain employment opportunities despite being born with an intellectual disability.  Ex. E (R. Jacobs). Mr. Hawkins also incorporates his love of God into his family, encouraging them to stay grounded and ensure their faith remains a top priority.  Ex. Y (M. Perry).

Mr. Hawkins also helped raise his companion Ethel Briggs' son Corey, who affectionately calls Mr. Hawkins "dad."  Mr. Hawkins also currently plays a very active role in the rearing of his teenage granddaughter, whom he picks up from school and takes to volleyball practice.  Mr. Hawkins' family would truly be devastated if he were sentenced to a period of incarceration.

The more than 50 letters of support, which cannot all be quoted here, but which we ask the Court to consider in full, are the testament to Mr. Hawkins' impact on his community. People who have known Mr. Hawkins personally and professionally for decades have submitted letters on his behalf despite the highly publicized negative press that he has received in the media.   These people know that his current offense does not define Mr. Hawkins' life.   As described by Dr. William H. Bennett II, Senior and Founding Pastor of the Good Success Christian Church and Ministries:

> His good works, uplifting service and positive impact is indeed, indelibly stamped in the hearts and minds of the thousands of people he has helped in so many ways through the various capacities he has served the citizens of our city.   Whether in his formal capacities at the different agencies or through his Church or even just as a compassionate neighbor and lifter of humanity, Vernon Hawkins has demonstrated the kind of sensitivity and service to humanity that has endeared people from every walk of life to him because they know by his actions that he sincerely cares about them.   What a blessing he has been to so many!

Ex. AA.

c.   <u>Mr. Hawkins' Advanced Age, in Combination with Serious Mental and Physical Health Conditions Warrant a Non-Custodial Sentence</u>

With an offense level of 4, we believe that the appropriate sentence based on the nature and circumstances of the offense, Mr. Hawkins' personal history and characteristics, would be probation.   If the Court relies on higher guidelines calculations, the Court can render a fair and appropriately significant sentence in this matter by sentencing Mr. Hawkins to a non-custodial sentence by applying a downward departure in accordance with U.S.S.G. §§ 5H1.1; 5H1.3; and 5H1.4.

The Sentencing Reform Act, 18 U.S.C. § 3551, provides that sentencing courts must impose sentences that are "sufficient but not greater than necessary" to accomplish the sentencing goals set forth in 18 U.S.C. § 3553(a)(2).   *Kimbrough v. United States*, 552 U.S. 85

(2007).   These goals include not only deterrence and incapacitation, but also rehabilitation, including to provide the defendant "with medical care or other correctional treatment in the most effective manner."   *Id*.   A sentencing court may take into consideration an individual defendant's specific age, mental and emotional condition, and physical condition when fashioning an appropriate sentence.   U.S.S.G. §§ 5H1.1; 5H1.3; and 5H1.4 (2010).

Considerations of age and health are particularly relevant in the case of Mr. Hawkins.   As described in the PSR ████████████████████████████████████████, Mr. Hawkins suffers from a number of serious mental and physical conditions████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████.   *See* PSR, ¶¶ 84-86████████████████████████.   Evidence of these mental and physical health conditions is not offered to try to excuse or minimize Mr. Hawkins' conduct. The record does demonstrate, however, that the defendant's advanced age, in combination with his serious mental and health conditions, are present to such an extraordinary degree that, if the Court were to apply a higher guideline range normally requiring incarceration, a deviation from the calculated guidelines range would be necessary to meet the goals of the Section 3553(a) because a lesser form of punishment would be equally efficient as and less costly than incarceration.

We believe the following departures from the Guidelines apply:

§5H1.1. Age:   At the time of sentencing, Mr. Hawkins will be 77 years of age.   His advanced age, in combination with the mental and physical characteristics described below,

distinguishes Mr. Hawkins' case from the typical cases covered by the guidelines, thus warranting a downward departure.

§5H1.3. Mental and Emotional Conditions:

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

§5H1.4. Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling

Addiction:  In addition to Mr. Hawkins' significant memory problems, Mr. Hawkins' suffers

from a host of severe physical conditions, that in combination are present to an unusual degree

and distinguish his case from the typical case covered by the guidelines, thus warranting a

downward departure.  ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

██

Accordingly, Mr. Hawkins' advanced age, in combination with his serious mental and health conditions, are present to such an extraordinary degree that deviation from the calculated guidelines range is necessary to meet the goals of the Section 3553(a) because a form of punishment such as probation would be equally efficient as and less costly than incarceration.

      d.      <u>The Requested Sentence Is Sufficient, But Not Greater than Necessary, to Satisfy the Purposes of Punishment</u>

In determining the need for the sentence imposed, courts consider the purposes of  "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2).

Mr. Hawkins is a non-violent, first-time offender, with a record of decades of exemplary contributions to his community.  PSR ¶¶ 70-82, 97-108.  He has fully accepted responsibility for his conduct by having pled guilty and has shown genuine remorse.  PSR ¶ 58.  Mr. Hawkins has suffered agonizing public humiliation and intense media scrutiny over the course of the past three years as a result of the highly publicized nature of his plea.  The ongoing restrictions that would apply to a probationary sentence, as well as the stigma of a federal felony and the embarrassment of his actions, achieves the sentencing goals applicable to Mr. Hawkins' actions.

While individualized deference should not be a concern – Mr. Hawkins is never going to violate the law again – the Court can also be confident that the requested punishment of probation will serve the purpose of deterring Mr. Hawkins from violating the law. ████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████   As his statements to the Probation Officer suggest, not only is Mr. Hawkins genuinely remorseful and embarrassed for his conduct, he is determined to "continue on the path of making positive differences."   PSR ¶ 58.   A sentence of imprisonment is thus unnecessary to protect society because of the minimal chance that Mr. Hawkins will violate the law again in the future.   Moreover, Mr. Hawkins has already demonstrated that he is willing and able to abide by Court-imposed requirements that typically accompany probation as evidenced by the nearly three years that he has dutifully abided by the conditions of his release pending sentencing.

Given Mr. Hawkins' advanced age and mental and physical health condition, by imposing a probationary sentence that permits Mr. Hawkins to continue his current treatment regimen with the doctors familiar with his conditions, this Court can provide for the most efficient and cost effective manner for treatment.

Mr. Hawkins agrees with the Probation Officer that he does not have the means to pay a fine within the applicable range for even the lowest offense level, and instead requests the imposition of a nominal fine or community service in lieu of any fine.   U.S. Sentencing Guidelines Manual § 5E1.2(c)(3); PSR ¶ 119.

III.     The Obstruction Enhancement Does Not Apply

In response to the draft PSR, the government argued that an obstruction of justice enhancement should apply because after pleading guilty, Mr. Hawkins stated that he "does not recall knowledge of ███████ making a payment to" █████ Close Relative and that "Hawkins did not know if [█████ Close Relative] paid workers or made promises to pay workers" on ████

campaign.  March 7, 2016 Letter at 6-7.  The PSR correctly does not incorporate these new "facts."  Furthermore, the Court should note that even if the obstruction enhancement were to apply, the corresponding offense level would be 8 (assuming no credit is given for acceptance of responsibility), resulting in a range of 0 to 6 months, still allowing the Court to determine that probation is an appropriate sentence for Mr. Hawkins.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████The government's allegations related to Mr. Hawkins, however, are insufficient to warrant an obstruction enhancement.

To obtain an obstruction of justice enhancement under the Guidelines, the government must prove not only that the defendant obstructed justice, but also that he did so willfully - "that the defendant consciously act[ed] with the purpose of obstructing justice."  *United States v. Monroe,* 990 F.2d 1370, 1376 (D.C. Cir. 1993) (quoting *United States v. Thompson,* 962 F.2d 1069, 1071 (D.C. Cir. 1992)).

Under the Guidelines, where a factor important to the sentencing determination is in dispute, a court may consider relevant information only if "the information has sufficient indicia of reliability to support its probable accuracy."  U.S. Sentencing Guidelines Manual 6A1.3.  There is such a dispute here.  Here, the government's argument for an obstruction enhancement rests ██████credibility as a witness for the government, and the assumption that Mr. Hawkins' statements were not the result of confusion, mistake, or a faulty memory, and were instead conscious acts with the purpose of obstructing justice.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████

b.        ██████ Revised Testimony Lack Sufficient Indicia of Reliability

i.        ██████ is Not Credible

██████ lacks credibility, and therefore, his testimony should not be given credence over Mr. Hawkins' own statements about his lack of memory.  According to the government, ██████ has been involved in the investigation of the ██████ campaign since August 2012, when he apparently believed that he had personal exposure to criminal liability and accordingly invoked his Fifth Amendment rights in the grand jury.  March 7, 2016 Letter at 2.  On July 18, 2014, the government decided to immunize ██████ for his own illegal campaign finance activities. March 7, 2016 Letter at 2, note 3.

1.        ██████ has Strong Motives to Curry Favor with the Government

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████

█



While ███████ has been immunized by the government for his participation in illegal campaign finance activities, as far as we are aware, ███████ has not been immunized for his role in procuring sex for ███████ and the related activities, thus remaining subject to a threat of prosecution, a compelling motivation for ███████ to do and say exactly what the government wants.  A very general estimate of potential penalties for just federal offenses, giving ███████ a criminal history category of II,[2] would result in:

- ████████████████████████████████████████████████████████████
  ████████████████████████████

- 18 U.S.C. § 1001 (false statements) – Level 6 under §2B1.1(a)(2) for a guideline range of 1–7 months;

- 18 U.S.C. § 2421 (interstate transportation for the purpose of prostitution) and 18 U.S.C. § 2422 (coercion and enticement of individual in interstate travel for the purpose of prostitution) – Level 14 under §2G1.1(a)(2), which under Special Instruction §2G1.1(d)(1) would be applied with respect to each victim had been contained in a separate count of conviction, for a guideline range of 18–24 months ████████████████████████████ and

- 26 U.S.C. § 7201 (tax evasion) – Level 14 under 2T1.1 ███████████████████
  ████████████████████████████

These calculations do not include penalties for ███████ numerous violations of the D.C. Code or other state law offenses.  The severity, frequency, and scale of those activities raises serious questions about ███████ participating in additional non-███████ related criminal activities.  ███████ had, and continues to have, an overwhelming motive and self-interest to curry favor with the government and ensure that the government is happy with his testimony.

---

[2] The government describes ███████ as having three prior criminal convictions: conspiracy to commit bank fraud; forgery, credit card fraud/credit card offense, and applying for a credit card with false identification; and obtaining money by false pretense and failing to return property or a lesser charge.  Depending on the actual penalties in those cases, ███████ criminal history category could be even higher.

2.        ████ Statements are Inconsistent

Additionally, by the government's own description, ████ is an inherently unreliable witness who changes his story.  The government generously describes ████ shifting stories as "corrections," but the result is still that ████ cannot be relied upon to tell the truth.  ████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████

Even after receiving immunity, ████ initially stated that he could not recollect if Mr. Hawkins was even involved in the payment from ████ to ████ Close Relative, a far cry from the government's current assertion that Mr. Hawkins was the "manager" of this alleged cash payment.  On July 18, 2014, only a few weeks before the testimony that the government now wishes to credit, ████ stated that he "was unsure if Vernon Hawkins had any involvement in the $10,000 cash from ████ to [████ Close Relative] or the Howard University students."  March 7, 2016 Letter at 4, note 6.  It is striking that the government would have the Court credit large parts of ████ original statements (March 7, 2016 Letter at ¶¶ 3, 4, 5, 6, 9), but ignore the particular part of ████ statement where he states that he was unsure if Mr. Hawkins was involved in the ████ payment.  Such blatant cherry picking of facts undermines the credibility of the government's arguments.

Furthermore, the government's repeated characterization of Mr. Hawkins as the "manager" of this transaction also undermines the government's credibility because it so

36

obviously overstates the facts. Even if one were to believe █████ revised testimony, Mr. Hawkins did not come up with the idea to pay the students. Mr. Hawkins did not supply the money. Mr. Hawkins did not provide instructions for how to withdraw the money. Mr. Hawkins did not receive the money. He simply expressed interest in making sure canvassers were paid, which itself is not illegal. This "manager" label is more a reflection of the government's desire to disproportionately punish Mr. Hawkins than reality.

3.    █████ <u>has Three Prior Felony Convictions for Crimes of Dishonesty</u>

█████ conflicting statements and clear personal interest in making the government happy are not the only things that substantiality undermine the credibility of his testimony. █████ also has three criminal convictions, all of which are for crimes involving dishonesty – bank fraud, forgery and credit card fraud, and obtaining money by false pretense. March 7, 2016 Letter at ¶ 11.

ii.    █████ <u>Description of Mr. Hawkins' Involvement is Substantially Uncorroborated</u>

All the government has put forth to corroborate █████ testimony that Mr. Hawkins was involved in the █████ payment are some banking records and some telephone records. The government does not proffer any testimonial support. Although the banking records indicate that on September 17, 2010, █████ company wired $15,200 to █████ account, they do not corroborate █████ revised testimony that Mr. Hawkins was involved. Additionally, the brief calls that took place between Mr. Hawkins and █████ show only that Mr. Hawkins knew █████ and had a few short conversations with him on September 17, 2010. During the March 7, 2014 interview, Mr. Hawkins acknowledged that he knows █████. Mr. Hawkins has never denied

that he worked with ████ on GOTV efforts, but that does not prove any involvement in the ████████████████ Close Relative payment.

Not only do the telephone records not provide sufficient corroboration to make ████ revised testimony reliable, it is particularly telling that there is no testimonial corroboration from the sources who had first-hand knowledge of Mr. Hawkins' alleged involvement – ████ and ████ Close Relative.  According to the government, ████ participated in "conversations with defendants Hawkins and ████" in which ████ was instructed to pay $10,000 to ████ Close Relative.  March 7, 2016 Letter at 3.  The government also states that ████ "had calls with Hawkins and ████ Close Relative to arrange a meeting." *Id.*  Yet, neither ████ nor ████ Close Relative has provided testimony corroborating ████ account that Mr. Hawkins was involved.   It may be the ████ Close Relative is unavailable due to 5th Amendment issues, but ████ has been available to the government as a cooperating witness for over two years.

c.     The Government Has Not Satisfied Its Burden Under the Law for the Obstruction Enhancement

Even if the Court were to credit ████ revised and uncorroborated testimony, the government has not satisfied the requirements for the obstruction enhancement under §3C1.1. Under the Guidelines, the two-level upward adjustment for obstruction of justice is only warranted "if (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the **defendant's instant offense of conviction**, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense."  U.S. Sentencing Guidelines Manual § 3C1.1 (emphasis added).

38

As such, the government is required to show that Mr. Hawkins' lack of recollection of the payment from ██████ obstructed or impeded the administration of justice regarding the instant offense of conviction, which in Mr. Hawkins' case, is the offense of making false statements about ████████ being asked to go out of town.  Although the government summarily stated in a footnote that the obstruction need not relate to the "instant offense," the government cited no support and does not explain how Mr. Hawkins' statement that he did not recollect the ██████ payment somehow obstructed the administration of justice for something completely different—his instant offense of conviction of making false statements about talking to ██████ about going out of town.  Even the cases on which the government relies for the obstruction enhancement demonstrate that the new obstructive conduct must relate to the instant offense of conviction in order to warrant an enhancement.  *United States v. Gibson*, 155 F.3d 844 (7th Cir. 1998) (defendant changed her story on four different occasions with respect to the instant offense of the count for which she was charged, robbery).[3]

In considering the obstruction enhancement, it is important to understand the chronology of the alleged false statements and obstructions.  As shown on the below timeline, the government now asks the Court to consider that, on March 7, 2014, Mr. Hawkins allegedly falsely stated that he could not recall knowledge of the ██████ payment to ██████ Close

---

[3] The government cites *United States v. Manfre*, 368 F.3d 832, 844-45 (8th Cir. 2004) for the premise that the court is "obliged to impose the enhancement where it found that defendant's false and inconsistent statements obstructed the investigation."  Not only was *Manfre* another example where the government was required to show that the obstruction related to the basis of the offense for which defendant was convicted – arson – but after a number of appeals and re-sentencings, the Eighth Circuit remanded the case for re-sentencing because the district court had concluded that the government had not met its burden for the obstruction of justice enhancement. *United States v. Manfre*, 456 F.3d 871, 874 (8th Cir. 2006) ("the enhancement does not apply merely because a defendant made false statements or denied the accusations against him. *Sitting Bear*, 436 F.3d at 934. We cannot say that the evidence in this case compelled the district court to impose the enhancement.").

Relative.  The government has not explained how an allegedly false statement in March 2014—a statement made after Mr. Hawkins' guilty plea in 2013, about unrelated conduct in September 2010—obstructed, attempted to obstruct, or impeded the administration of justice for the investigation an offense which had occurred in 2012.  There is no of connection between the two statements.  The allegedly false statement in 2014 by definition could not have affected the investigation of the 2012 statement about which Mr. Hawkins already had pled guilty in 2013.



Importantly, the government does not explain how Mr. Hawkins' statement that he lacked recollection was "plainly material" or how it affected the ability of the government to bring charges against others.  Nor does it explain what additional information they believe Mr. Hawkins had that would have contributed that was not already in the government's possession as a result of the March 2014 plea agreement with ████████, or the non-prosecution agreement with ████.  Contrary to its assertion, the government not only brought charges against and reached a plea agreement with ████████ *before* Mr. Hawkins' allegedly false lack of recollection, and ████████ Statement of Offense admits to paying $10,000 to a close family member of ████ immediately after the September 2010 primary to help cover campaign expenses for individuals who worked in support of the campaign.  ████████ Statement of

Offense ¶ 38.  Thus, even without Mr. Hawkins' recollection, the government was able to bring charges against ███████.  Thus, the government has made no showing that Mr. Hawkins' lack of recollection was either (1) material, or (2) "significantly obstructed or impeded" the investigation of the instant offense, i.e., the false statement to which Mr. Hawkins has pled guilty.

Furthermore, the government's request to both sentence Mr. Hawkins under obstruction and to apply the obstruction enhancement is inappropriate.  U.S. Sentencing Guidelines Manual § 3C1.1, comment (n.7).  Application Note 7 to § 3C1.1 provides that if a defendant is convicted of an offense covered by § 2J1.2 (Obstruction of Justice), the adjustment for obstruction of justice "is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself."  U.S. Sentencing Guidelines Manual § 3C1.1, comment (n.7) (providing an example of significant further obstruction as a defendant threatening a witness during the course of the prosecution for the obstruction offense).  There are no facts of "significant further obstruction" here.

Although the government has thrown in an extensive and, we admit, fascinating, set of allegations regarding ████████████, it really has not connected the dots so as to lead to a conclusion that the obstruction of justice enhancement should apply.  Conceding for the sake of argument that ██████ description of the ████████████ Close Relative payment is accurate, that does not prove that Mr. Hawkins' own statement of memory failure is not.  ██

████████████████████████████████████████████████

████████████████████████████████████████████████

███████Someone telling the truth to the best of his ability cannot be subject to the obstruction of justice enhancement.

## IV.    Conclusion

Given Mr. Hawkins' advanced age (77 years old), lack of criminal history, significant memory deficiencies, confluence of serious physical medical conditions ████████████████ ███████████, and his lifetime of service to the community and betterment of others, we respectfully request that Mr. Hawkins should be sentenced to a period of probation.

Respectfully submitted,

/s/  William E. Lawler, III
William E. Lawler, III
D.C. Bar No. 398951
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037-1701
(202) 639-6500
(202) 639-6604 (facsimile)
wlawler@velaw.com

Carla Jordan-Detamore
D.C. Bar No. 1026531
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037-1701
(202) 639-6590
(202) 478-0744 (facsimile)
cjordan-detamore@velaw.com

**ATTORNEYS FOR DEFENDANT VERNON HAWKINS**

### CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2016, I electronically filed the foregoing DEFENDANT'S REDACTED MEMORANDUM IN AID OF SENTENCING using the CM/ECF system, which will send notification of such a filing to all counsel of record.


   /s/ Carla Jordan-Detamore
Carla Jordan-Detamore
Attorney for Defendant Vernon Hawkins