**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

VERNON HAWKINS,

　Defendant.

**Criminal No. 13-227 (CKK)**

**MEMORANDUM OPINION**
(May 9, 2016)

On August 13, 2013, Defendant Vernon Hawkins pled guilty to one count of Making a False Statement in violation of 18 U.S.C. § 1001.  Presently before the Court are the [58] Final Presentence Investigation Report filed by the United States Probation Office, the Government's [63] Memorandum in Aid of Sentencing, Defendant's [65] Memorandum in Aid of Sentencing, the Government's [70] Reply Memorandum in Aid of Sentencing, and Defendant's [72] Response to the Government's Memorandum in Aid of Sentencing, each of which addresses the issue of the appropriate calculation under the United States Sentencing Guidelines ("U.S.S.G.") that the Court should consider in imposing its sentence.  Given the legal issues raised in the parties' briefing on this issue, the Court is now rendering its decision in writing in advance of the sentencing hearing in order to explain the legal basis for the Court's decision regarding the application of the guidelines to this action.

For the reasons described herein, the Court has determined that Defendant's base offense level should be calculated pursuant to U.S.S.G. §§ 2B1.1(c)(3) & 2J1.2(a), and, therefore, is 14. Moreover, the Court finds that the parties have presented factual disputes that must be resolved in order to determine whether the Court should apply an upward adjustment for obstruction of justice

pursuant to U.S.S.G. § 3C1.1 and/or a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As such, the Court shall reserve ruling on these factual disputes until the sentencing hearing.

## BACKGROUND

On August 13, 2013, Defendant pled guilty to a one-count Information, charging Defendant with a Making a False Statement in violation of 18 U.S.C. § 1001. *See* Information, ECF No. [1]. As described in the Information, on or about December 2011, Defendant gave a person ("Person One") funds that Defendant received from another criminal defendant pending sentencing before this Court, in order to persuade Person One to leave town for an extended period of time, so that Person One would be unavailable to speak with federal agents in the FBI's investigation into a Get Out of the Vote ("GOTV") effort funded by a particular executive in support of a 2010 mayoral campaign. *Id.* However, on or about August 16, 2012, Defendant did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations to FBI special agents by stating that: (1) "he did not know of anyone asked or told to go out of town who had been involved with" the 2010 mayoral campaign or the GOTV initiative at issue; (2) "he never requested for anyone to leave town so that they could not come to the U.S. Attorney's Office or speak with federal agents"; and (3) "he did not help or assist with sending anyone out of town so that they would not be able to speak with federal agents in the FBI's investigation" of the GOTV effort. *Id.*

Pursuant to the plea agreement, the parties specifically reserved the right to litigate at sentencing which sentencing guideline[1] is applicable to Defendant's conduct. Plea Agmt. at 3,

---

[1] Pursuant to the parties' plea agreement, the 2012 edition of the U.S. Sentencing Commission's *Guidelines Manual* is applicable in this action. As such, all references to the

ECF No. [6].  During the plea hearing, the Court specifically set forth both the Government's and Defendant's view as the applicable guideline(s) and the related base offense level that would apply under each calculation.  Tr. 53:9—56:6 (Aug. 13, 2013), ECF No. [20]. Defendant indicated on the record that he had discussed with counsel the parties' differing positions regarding the application of the guidelines.  *Id.* 54:11, 54:17, 56:6.

As previously mentioned, both parties and the U.S. Probation Office now have provided the Court with briefing more fully explaining their respective guideline calculations and the bases for those calculations.  The Court shall briefly set forth the differing positions as to the appropriate guideline calculation in this case.  The following chart highlights the areas of dispute between the various calculations before the Court:

| | U.S. PROBATION OFFICE | GOVERNMENT | DEFENDANT |
|---|---|---|---|
| **Base offense level** | **14**<br><br>(U.S.S.G. §§ 2B1.1(c)(3) & 2J1.2) | **14**<br><br>(U.S.S.G. §§ 2B1.1(c)(3) & 2J1.2) | **6**<br><br>(U.S.S.G. § 2B1.1(a)(2)) |
| **Adjustment for Obstruction of Justice** | **0** | **+2**<br><br>(U.S.S.G. § 3C1.1) | **0** |
| **Acceptance of Responsibility** | **-2**<br><br>(U.S.S.G. § 3E1.1(a)) | **0** | **-2**<br><br>(U.S.S.G. § 3E1.1(a)) |
| **TOTAL OFFENSE LEVEL** | **12** | **16** | **4** |

As such, the Court must first resolve the applicable base offense level, and then must determine whether to apply an upward adjustment for obstruction of justice and/or a downward adjustment for acceptance of responsibility.  The Court shall address each issue in turn.

---

U.S.S.G. throughout this Memorandum Opinion shall refer to the 2012 edition unless otherwise noted.

## DISCUSSION

### A. Base offense level

The first issue before the Court is whether Defendant's base offense level is properly calculated pursuant to U.S.S.G. § 2B1.1(a)(2), as Defendant asserts, or whether the cross-reference provision of U.S.S.G. § 2B1.1(c)(3) is applicable. The parties generally agree that U.S.S.G. § 2B1.1 (fraud guideline) is the starting point for the analysis of a violation of 18 U.S.C. § 1001. Defendant argues that the Court should apply U.S.S.G. § 2B1.1(a)(2), which provides that the base offense level for a defendant convicted of an offense of fraud and deceit is 6. However, the Government and the U.S. Probation Office assert that the cross-reference provision of U.S.S.G. § 2B1.1(c)(3), is applicable in this instance. Pursuant to U.S.S.G. § 2B1.1(c)(3), if the defendant is convicted under a statute proscribing false, fictitious, or fraudulent statements or representations generally, such as 18 U.S.C. § 1001, and "the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct)," the Court should apply that other guideline.[2] Application Note 15 to U.S.S.G. § 2B1.1 explains:

> Subsection (c)(3) provides a cross reference to another guideline in Chapter Two (Offense Conduct) in cases in which the defendant is convicted of a general fraud statute, and the count of conviction establishes an offense involving fraudulent conduct that is more aptly covered by another guideline. Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, or a similarly general statute, although the offense involves fraudulent conduct that is also covered by a more specific statute.

---

[2] The parties do not dispute that the third requirement to apply the cross-reference provision has been met in this case, i.e. the offense did not involve a firearm, destructive device, explosive material, or controlled substance, nor did it involve arson or property damage by use of explosives. *See* U.S.S.G. § 2B1.1(c)(3).

U.S.S.G. § 2B1.1 application n.15 (2012).[3] Based on the cross-reference provision, the Government and the U.S. Probation Office assert that Defendant's conduct is more aptly covered by U.S.S.G. § 2J1.2, the guideline for obstruction of justice.  Pursuant to U.S.S.G. § 2J1.2(a), the base offense level for an obstruction of justice offense is 14.

The parties raise two issues central to their respective positions.  First, the parties dispute whether the Court may look *only* to the charging document, in this case the Information filed on August 12, 2013, or whether the Court may consider other evidence in the record, including the facts set forth in Statement of the Offense to which Defendant stipulated as part of his plea, in order to determine whether Defendant's conduct satisfies all the elements of an obstruction of justice charge such that the cross-reference provision of U.S.S.G. § 2B1.1(c)(3) is applicable.[4] Second, the parties dispute whether Defendant's conduct meets the statutory requirements of various obstruction of justice offenses when applying either the more or less restrictive view of what conduct the Court may consider.  For the reasons described herein, the Court shall consider conduct specifically related to the offense of conviction in the Statement of the Offense and in the charging document to which Defendant pled guilty in order to determine whether the cross-reference provision U.S.S.G. § 2B1.1(c)(3) is applicable.  However, the Court finds that even if it only looks to the conduct set out in the count of the Information to which Defendant pled, Defendant's conduct satisfies all the elements of an obstruction of justice offense pursuant to 18

---

[3] In the current version of the guidelines, this language appears at U.S.S.G. § 2B1.1 application n.16 (2015).

[4] In this instance, Defendant pled guilty to a one-count Information.  As such, in its analysis, the Court discusses the "charging document" or "Information" broadly without distinguishing the "count of conviction" because Defendant pled to the entirety of the charging document.  If there had been other counts that were dismissed as part of the plea, the Court would only consider the counts to which Defendant actually was convicted.

U.S.C. § 1512(b)(3).  Moreover, considering Defendant's conduct as stipulated to in the Statement of the Offense, the Court finds that Defendant's conduct also is sufficient to satisfy the elements of offenses pursuant to 18 U.S.C. §§ 1503 and 1512(c)(2).

1. <u>The Court shall consider both the offense conduct in the Information and in the Statement of the Offense.</u>

The Court first turns to the issue of whether it may only look to the conduct set out in the Information, or whether it may consider other proven conduct related to the offense of conviction when determining whether Defendant's conduct establishes an offense specifically covered by the obstruction of justice guideline (U.S.S.G. § 2J1.2).  At issue is the language of the cross-reference provision of U.S.S.G. § 2B1.1(c)(3) that provides, in relevant part, that it is applicable when "the conduct set forth in *the count of conviction establishes an offense* specifically covered by another guideline in Chapter Two (Offense Conduct) . . . ." U.S.S.G. § 2B1.1(c)(3) (emphasis added). Defendant argues that the language of the provision limits the Court's inquiry into the conduct set forth in the charging document.  Def.'s Mem. in Aid of Sent'g at 4-7.  The Government argues that the language merely limits the Court's inquiry to any *offense* conduct, as opposed to any *relevant* conduct, whether it be in the charging document or in other evidence before the Court as long as it is related to the offense of conviction.  Govt.'s Mem. in Aid of Sent'g at 25-28.  For the reasons described herein, the Court agrees with the Government that it may consider both the offense conduct in the Information and in the Statement of the Offense in this matter.

a. *Plain meaning and history of U.S.S.G. 2B1.1(c)(3) support considering offense conduct beyond that in the charging document.*

The cross-reference provision of U.S.S.G. 2B1.1(c)(3) became effective on November 1, 2001, pursuant to Amendment 617 to the guidelines.   Prior to Amendment 617, the application note to the fraud guideline provided: "*Where the indictment or information* setting forth the count

of conviction (*or a stipulation as described in § 1B1.2(a)*) establishes an offense more aptly covered by another guideline, apply that guideline rather than [the fraud guideline]." U.S.S.G. § 2F1.1, application n.14 (2000) (amended 2001) (emphasis added).   Amendment 617 made the cross-reference provision a part of the actual guideline rather than a reference in the application note.   Notably, the Amendment also struck the reference to the "indictment or information" in the newly enacted cross-reference provision of § 2B1.1(c)(3) and removed any reference to the language of § 1B1.2, which discusses the use of a stipulation made as part of a plea agreement.   At that time, U.S.S.G. § 1B1.2 explained: "[I]n the case of a plea agreement (written or made orally on the record) containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two applicable to the stipulated offense." U.S.S.G. § 1B1.2(a) (2000).   As the Government notes, the application notes to U.S.S.G. § 1B1.2 also were amended effective November 1, 2001, to clarify when the Court should apply the guideline for a stipulated offense.   Specifically, the Sentencing Commission explained: "A factual statement or a stipulation contained in a plea agreement (written or made orally on the record) is a stipulation for purposes of subsection (a) *only if both the defendant and the government explicitly agree that the factual statement or stipulation is a stipulation for such purposes*." U.S.S.G. app. C, Amend. 613 (emphasis added).

The general purpose of the revisions in Amendment 617 was explained by the U.S. Sentencing Commission:

> The amendment includes a new cross reference (subsection (c)(3)) that is more generally applicable and intended to apply whenever a broadly applicable fraud statute is used to reach conduct that is addressed more specifically in another Chapter Two guideline.   Prior to this amendment, the fraud guideline contained an application note that instructed the user to move to another, more appropriate Chapter Two guideline, under specified circumstances. Although this note was not a cross reference, but rather a reminder of the principles enunciated in §1B1.2, it

operated like a cross reference in the sense that it required use of a different guideline.

U.S.S.G. app. C, Amend. 617.

Both parties contend that the history of Amendment 617 supports their position in this case. Defendant focuses on the Sentencing Commission's exclusion of the reference to U.S.S.G. § 1B1.2, the provision discussing facts in the stipulation, in support of its argument that the Court may only look to the conduct described in the charging document. The Government argues that the removal of the specific reference to the indictment or information from the cross-reference provision bolsters its argument that the Court may look at any *offense conduct*, not just that in the charging document. Moreover, the Government argues that the reference to § 1B1.2 was eliminated by the Sentencing Commission because § 1B1.2, as amended, allows the parties to stipulate to the relevant offense guideline whereas § 2B1.1(c)(3), as amended, allows the Court to consider the stipulated facts but eliminates the reference to the parties ability to stipulate to the relevant offense guideline. Govt.'s Mem. in Aid of Sent'g at 26-27 n.16.

A plain reading of the language of the guideline does not appear to limit the Court to looking only at the conduct set forth in the indictment or information, as Defendant argues. Indeed, the language of the provision itself – "the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline" – appears to limit the Court's inquiry only to the conduct related to the offense of conviction, as opposed to all relevant conduct including conduct underlying other offenses to which a defendant was not convicted. The reference to the "conduct set forth in the count of conviction" supports the conclusion that the Court can consider conduct stipulated to by Defendant underlying the offense of conviction when determining the appropriate guideline to apply under the cross-reference provision. Nothing in the language of the

§ 2B1.1(c)(3) appears to expressly limit the Court to looking only at the conduct in the charging document and, notably, the Sentencing Commission actually *eliminated* the language referencing the indictment or information when it created the cross-reference provision of § 2B1.1(c)(3) at issue.  Therefore, it appears that if the Commission had sought to limit the Court's inquiry in the way that Defendant argues, it would have left the explicit reference to those documents in the provision.  Instead, it appears based on the language of the cross-reference provision that the Court may consider other facts stipulated to by Defendant that underlie his offense of conviction.  As such, the Court concludes the language of the cross-reference provision at issue supports the Government's interpretation that the Court may consider offense conduct contained in the stipulated facts in the Statement of the Offense.

> b. *Cases interpreting U.S.S.G. 2B1.1(c)(3) cited by Defendant are distinguishable.*

In reaching its conclusion, the Court recognizes that there are no cases that squarely support this Court's interpretation of § 2B1.1(c)(3) and there are cases that appear to apply § 2B1.1(c)(3) in the manner advocated by Defendant.  However, the cases cited by Defendant can be differentiated factually from the instant action and do not expressly address the nuanced issue before this Court.  Further, the Court notes that neither party has pointed to any binding authority requiring the Court to adopt their respective position as to this issue.  However, the Court shall nonetheless discuss the cases cited by Defendant that reach a contrary finding and further explain its reasoning for not adopting a similar approach.

In *United States v. Genoa*, 343 F.3d 578 (2d Cir. 2003), the U.S. Court of Appeals for the Second Circuit addressed the applicability of the cross-reference provision of § 2B1.1(c)(3) to a defendant who pled guilty to one count of violating 18 U.S.C. § 1001 when he lied to the

9

Government during "innocence proffers." The Second Circuit in its analysis noted that it had interpreted the prior version of the cross-reference provision, in force before the enactment of Amendment 617, to permit its application in instances when an offense was more aptly covered by another guideline even if all the elements of the other offense could not be established. *Id.* at 583-84 (quoting *United States v. Napoli*, 54 F.3d 63, 66-67 (2d Cir. 1995)). After reviewing the changes made by Amendment 617 to this provision, the Second Circuit found that the Sentencing Commission's inclusion of the requirement that the conduct alleged in the count of the indictment be "specifically covered" by another guideline clarified that "§ 2B1.1(c)(3) is applicable only if the elements of another offense are established by conduct set forth in the count of conviction . . . ." *Genoa*, 543 F.3d at 584. However, the Second Circuit ultimately held that Defendant's conduct set forth in the count of the conviction did not establish violations of any obstruction-of-justice statutes rendering the cross-reference provision of the fraud guideline inapplicable. *Id.* at 586. While Defendant argues that the Second Circuit's holding in *Genoa* definitively establishes that the sentencing court should only look at the conduct in the indictment, the Second Circuit's analysis focuses on whether the cross-reference provision is applicable even if all the *elements* of another offense covered by a different guideline are not established. Indeed, as the Second Circuit explained: "[T]he plain language of § 2B1.1(c)(3) indicates that § 2B1.1(c)(3) is applicable only if the conduct alleged in the count of the indictment of which defendant is convicted establishes the elements of another offense." *Id.* at 583. As such, while the Second Circuit does discuss "the conduct alleged in the count of the indictment," it does not specifically hold that the Court may look *only* to the conduct in the charging document, and not to other conduct underlying the offense of conviction, in order to determine whether all the elements of an offense covered by another guideline have been established.

Other U.S. Court of Appeals addressing the Second Circuit's holding in *Genoa* have reached differing results.[5]  In *United States v. Bah*, 439 F.3d 423 (8th Cir. 2006), the U.S. Court of Appeals for the Eighth Circuit citing to *Genoa* held that the cross-reference provision of § 2B1.1(c)(3) was inapplicable because the conduct set forth in the count of the indictment to which the defendant pled did not establish another offense.  The Eighth Circuit found that the plain language of § 2B1.1(c)(3) requires that the Court look only to the language in the count of the conviction in the indictment.  *Id.* at 427.  Importantly, the Eighth Circuit noted this reading of the provision was "supported by the language that the United States Sentencing Commission chose to exclude from the current version of the section."  *Id.* at 427 n.3. While the Eighth Circuit noted that the Commission excluded the reference to a "stipulation," it made no mention of the fact that the Commission also excluded language specifically referencing the "indictment or information." *See id.*  Similarly, citing to *Genoa* and *Bah*, the U.S. Court of Appeals for the Fifth Circuit in *United States v. Garcia*, 590 F.3d 308 (5th Cir. 2009), held that the district court properly applied the cross-reference provision of § 2B1.1(c)(3) because the one-count indictment alleged another offense.  *Id.* at 316.

In contrast, the U.S. Court of Appeals for the Eleventh Circuit rejected a defendant's argument that based on *Genoa*, the district court erred in applying § 2B1.1(c)(3) at sentencing because the provision requires that all the elements of another offense be established.[6]  *United*

---

[5] Defendant cites to *United States v. Kim*, 95 F. App'x 857 (9th Cir. 2004), an unpublished opinion from the U.S. Court of Appeals for the Ninth Circuit in support of its argument.  Def.'s Mem. in Aid of Sent'g at 4.  However, pursuant to Ninth Circuit Rule 36-3, unpublished opinions issued prior to 2007 are not precedent.  As such the Court has not considered this opinion because it is not treated as precedent within that Circuit.

[6] The Court has considered this unpublished opinion it is discussion because pursuant to Federal Rule of Appellate Procedure 32.1, citation to cases issued on or after January 1, 2007, is permissible.

*States v. Ochoa*, 291 Fed. App'x 265 (11th Cir. 2008), *cert. denied* 555 U.S. 1203 (2009).

Specifically, Defendant argued that Amendment 617 narrowed the application of the cross-reference provision by adding the "specifically covered" language and removing the "more aptly covered" language.[7] *Id.* at 268. The Eleventh Circuit, applying a plain error standard, found that the explicit language of the cross-reference provision does not resolve the issue raised by the defendant, nor was there any controlling precedent requiring that court to interpret the provision as the defendant argued. *Id.* As such, the Eleventh Circuit affirmed the decision to apply the cross-reference provision, finding that the district court had not plainly erred. *Id.*

Defendant also cites to the U.S. District Court for the Southern District of West Virginia's opinion in *United States v. Griffith*, 115 F. Supp. 3d 726 (S.D.W.V. 2015), in support of his argument that the Court should consider only the conduct set forth in the indictment. In *Griffith*, the district court found that the cross-reference provision of § 2B1.1(c)(3) is only applicable if the count of conviction establishes all the elements of an additional offense. *Id.* at 744. The district court reached this conclusion based on the precedent from other courts, including the Second Circuit's holding in *Genoa*, the plain meaning and the history of § 2B1.1(c)(3), and the purpose of the guidelines, i.e., to provide uniformity and predictability. *Id.* at 740-44. The district court noted that requiring the count of conviction to make out all the elements of another offense "is the only approach that promotes certainty in the court's application of the [g]uidelines." *Id.* at 743. However, in *Griffith*, the defendant pled guilty to one count of making a false, fictitious, or fraudulent statement or representation based on a statement he made to IRS special agents in violation of 18 U.S.C. § 1001(a)(2). The 2014 statement that led to the charge of conviction related

---

[7] As previously noted, the "more aptly covered" language remains in application note to § 2B1.1(c)(3). *See* U.S.S.G. § 2B1.1 application n.15 (2012).

to an earlier series of schemes to collect cash kickbacks. Notably, however, in *Griffith*, the conduct at issue that the district court declined to consider in its analysis of the applicability of the cross-reference provision of § 2B1.1(c)(3), was conduct that the court had already deemed was not relevant conduct. The court held that the conduct at issue, relating to the kickback scheme and associated losses, was not relevant conduct because the scheme, even though it was expressly referenced in the Information, did not occur during the commission of the offense of conviction (a violation of 18 U.S.C. § 1001), in the preparation of that offense, or in the course of attempting to avoid detection or responsibility for that offense. *Id.* at 733. Moreover, the district court found that the scheme at issue and the offense of conviction were not part of the same common scheme or plan or the same course of conduct. *Id.* at 736-37. As such, while the district court in *Griffith* only focused on the conduct set forth in the information filed in that case, it declined to consider other conduct it deemed as not relevant conduct to the charge of conviction. *Id.* at 744 ("In this case, the Information fails to establish all of the elements for the additional offense of conspiracy to commit honest services fraud, such as whether the Scheme involved the use of the mails or wires."). Like the court in *Griffith*, other district courts have approvingly cited *Genoa* and *Bah* as standing for the proposition that the Court may look only to language of the indictment or information when determining whether the cross-reference provision is applicable. *See United States v. Rodriguez,* 493 F. Supp. 2d 833, 834 (W.D. Tex. 2007) (considering only the conduct described in the count of conviction in defendant's indictment); *United States v. Ralph*, No. 08-40051-01, 2008 WL 4911151, at *2-3 (D. Kan. Nov. 13, 2008) (holding that the cross-reference provision of U.S.S.G. § 2B1.1(c)(3) was inapplicable when defendant was convicted of a violation of 18 U.S.C. § 1001, and the charging document did not establish specific intent required for the offense of criminal interference with the right to fair housing).

13

Here, the Government raises a slightly different argument than the issue discussed at length in some of the earlier cited opinions. The Government's argument is not that all the elements of another offense need not be established in order for the Court to apply the cross-reference provision. Rather, the Government argues that the Court need not restrict the inquiry of whether another offense was established to the four corners of the charging document. The Government contends that the Court should consider the conduct set forth in the Statement of the Offense which Defendant admitted to as part of his plea. Stmt. of Offense, ECF No. [5]. As such, it is this Court's view that it addresses a slightly different issue than the one presented in either *Genoa* and *Griffith*.[8] Moreover, as previously discussed, the Court finds nothing in the language of § 2B1.1(c)(3) that restricts the Court to only consider the conduct set forth in the Information when, as here, Defendant also stipulated to certain conduct as part of his plea agreement. The Court does find, however, that its inquiry regarding the applicability of § 2B1.1(c)(3) is limited to offense conduct underlying the offense of conviction (18 U.S.C. § 1001), as opposed to all relevant conduct. As such, the Court now turns to the issue of whether Defendant's conduct warrants applying the cross-reference provision of § 2B1.1(c)(3).

2. <u>The offense conduct set forth in the Information and Statement of the Offense warrant applying U.S.S.G. § 2B1.1(c)(3) in this action.</u>

The Court next turns to the issue of whether Defendant's offense conduct in the Information and Statement of Offense establish all the elements of an obstruction of justice offense such that the Court should apply the cross-reference provision of U.S.S.G. § 2B1.1(c)(3), and calculate Defendant's base offense level using § 2J1.2 (obstruction of justice guideline). For the

_____

[8] As previously discussed, the Court does not dispute that other courts applying *Genoa* have expressly only considered conduct set forth in the count(s) of conviction in the charging document.

14

reasons described, the Court finds looking only at the conduct in the Information, Defendant violated 18 U.S.C. § 1512(b)(3).  The Court also finds when considering the offense conduct in the Information and the Statement of the Offense, that Defendant also violated 18 U.S.C. §§ 1503 and 1512(c)(2).  As such, the Court shall apply the cross-reference provision of § 2B1.1(c)(3), when calculating Defendant's base offense level.

a. *Conduct in the Information establishes a violation of 18 U.S.C. § 1512(b)(3).*

Notwithstanding the Court's conclusion that it may look at all offense conduct in determining which guideline to apply, the Court shall first look only to the conduct set forth in the Information. For the reasons described herein, the Court finds that Defendant's conduct as described *only in the Information* to which he pled establishes all the elements of a violation of § 1512(b)(3).  "To prove a violation of § 1512(b)(3), the government must establish beyond a reasonable doubt that the defendant knowingly and willfully (1) engaged in misleading conduct toward another person, (2) with the intent to hinder, delay or prevent the communication of information to a federal law enforcement officer or federal judge, (3) about the commission or the possible commission of a federal crime." *United States v. Veal*, 153 F.3d 1233, 1253 (11th Cir. 1998), *cert. denied* 526 U.S. 1147 (1999), *overruled on other grounds by Fowler v. United States*, 131 S. Ct. 2045 (2011) *as recognized in United States v. Chafin*, 808 F.3d 1263, 1274 (11th Cir. 2015); *see also United States v. Ronda*, 455 F.3d 1273, 1284 (11th Cir. 2006); *United States v. Carson*, 560 F.3d 566, 580 (6th Cir. 2009); *United States v. Perry*, 335 F.3d 316, 320-21 (4th Cir. 2003), *cert. denied* 540 U.S. 1185 (2004).  "[T]o support a conviction under § 1512, 'the Government must show that there was a *reasonable likelihood* that a relevant communication would have been made to a federal officer.'"  *Chafin*, 808 F.3d at 1274 (quoting *Fowler*, 131 S.

15

Ct. at 2048).

Pursuant to the Information, Defendant "knowingly and willfully" made materially false, fictitious, and fraudulent statements and representations to FBI special agents.  Information at 2. Defendant engaged in "misleading conduct" by knowingly making false statements and intentionally concealing material facts.  *Id.*; *see also* 18 U.S.C. § 1515(a)(3)  (defining "misleading conduct").  Defendant's "misleading conduct" was directed "toward another person," in this case the FBI special agents.  Moreover, the false statements were made "with the intent to hinder, delay or prevent the communication of information to a federal law enforcement officer."  Indeed, here, Defendant made false statements to FBI special agents when he stated that he did not know of anyone asked to go out of town who had been involved with the 2010 mayoral campaign or the GOTV initiative at issue, that he never requested for anyone to leave town so that they could not come to the U.S. Attorney's Office or speak with federal agents, and that he did not help or assist with sending anyone out of town so that they would not be able to speak with federal agents in the FBI's investigation of the GOTV effort.  Information at 2-3.  In providing this false information to FBI agents, Defendant clearly intended to "prevent," "hinder," and "delay" the communication of the truthful information he had on these topics.  As Defendant admitted, he had given funds to Person One in order to persuade Person One to leave town for an extended period of time so that he would be unavailable to speak with federal agents in the FBI's investigation of the GOTV initiative.  *Id.* at 3. Finally, Defendant's "misleading conduct" related to the commission or the possible commission of a federal crime.  Here, Defendant's false statements directly to the FBI special agents were relevant to the possible commission of violations of: Sections 1512(b)(1), (b)(3), (c)(2) (tampering with a witness, victim, or an informant); and Section 1503 (influencing or injuring officer or juror generally).

Defendant argues that 18 U.S.C. § 1512(b)(3) is not applicable to Defendant's conduct as set forth in the Information because a violation under that statute requires the Defendant to engage in misleading conduct toward a third person with the intent to hinder, delay, or prevent the communication to a law enforcement officer. Def.'s Resp. to Govt.'s Mem. in Aid of Sent'g at 5. As such, Defendant's argument is that he could not violate § 1512(b)(3) by *directly* misleading a federal law enforcement officer but rather that he must do so through a third party.  The Court finds this argument is without merit.  As previously mentioned, the statute requires that the defendant engage in misleading conduct toward "another person."  Nothing in the statutory language appears to restrict the definition of "another person" to any non-federal law enforcement officer, and courts interpreting the provision have concluded that "another person" is commonly understood to mean "any person."  *See, e.g., Veal*, 153 F.3d at 1245 ("As the district court found, there is no ambiguity in 'another person,' which is easily and commonly understood to mean *any* person, regardless of whether he possessed knowledge of the commission or possible commission of a federal crime from being an eyewitness or investigating official."); *United States v. Gardner*, 993 F. Supp. 2d 1294, 1302 (D. Or. 2014) ("Although the legislative purpose and title of the [Victim and Witness Protection Act] may support an argument that 18 U.S.C. § 1512(b)(3) applies only to victims, witnesses, and informants, the plain text of the statute is unambiguous. Therefore, the Court looks no further than the plain meaning of the text.").  Accordingly, the Court finds that Defendant's conduct as described only in the Information establishes all the elements of a violation of § 1512(b)(3) and, as such, the application of U.S.S.G. § 2J1.2(a) (obstruction of justice guideline) through cross-reference provision of § 2B1.1(c)(3) (fraud guideline) is warranted in this case.

> b. *Conduct in the Information and Statement of the Offense establishes violations of 18 U.S.C. §§ 1503 and 1512(c)(2).*

The Court next considers Defendant's conduct as set forth both in the Information and the Statement of the Offense which includes conduct that Defendant admitted to as part of his plea agreement. Pursuant to the Statement of the Offense, on or about August 16, 2012, Defendant, with his lawyer present, engaged in a voluntary interview with two FBI agents and representatives from the U.S. Attorney's Office for the District of Columbia. Stmt. of Offense at 7. During that interview, Defendant made "statements . . . he knew to be false and misleading to the FBI," "with knowledge of and in contemplation of a pending federal investigation." *Id.* The false and misleading statements mirror those described in the Information. *See id.* at 7-8. Moreover, "[t]hese false statements were material, as they were capable of influencing the course of the FBI's investigation" and "were made in an attempt to influence the federal grand jury investigation" into the GOTV initiative. *Id.* at 8. Defendant's conduct was both knowing and willful. *Id.* As described herein, the Court finds that Defendant's conduct as described satisfies all the elements of violations of at least two obstruction of justice offenses codified under 18 U.S.C. § 1503 and § 1512(c)(2). The Court shall discuss each in turn.

Pursuant to 18 U.S.C. § 1503, a person is prohibited from "corruptly . . . endeavor[ing] to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503(a). "As to obstruction of justice, 18 U.S.C. § 1503 is satisfied whenever a person, with the 'intent to influence judicial or grand jury proceedings,' takes actions having the 'natural and probable effect' of doing so." *In re Sealed Case*, 162 F.3d 670, 674 (D.C. Cir. 1998) (quoting *United States v. Aguilar*, 515 U.S. 593, 600 (1995)). To do so corruptly, "'the defendant need only have had knowledge or notice that success in his fraud would have likely resulted in an obstruction of justice.'" *United*

*States v. Pasha*, 797 F.3d 1122, 1132 (D.C. Cir. 2015) (quoting *United States v. Neiswender*, 590 F.2d 1269, 1273 (4th Cir. 1979)).  Here, it is clear that Defendant's false statements made to the FBI agents and the U.S. Attorney's Office "in an attempt to influence the federal grand jury investigation" satisfy all the elements of 18 U.S.C. § 1503.

Pursuant to 18 U.S.C. § 1512(c)(2), a person is prohibited from corruptly obstructing, influencing, or impeding any official proceeding, or attempting to do so.  "The term 'official proceeding' includes proceedings before federal judges, grand juries, and Congress." *United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009) (citing 18 U.S.C. §§ 1515(a)(1)(A) & (B)). Defendant argues that he cannot be said to have acted "corruptly" because Defendant gave money to and discussed leaving town with Person One, who was not under subpoena and had no legal duty to speak with law enforcement officials.  Defendant's argument conflates the incident with Person One with Defendant's false statements to law enforcement officials regarding that incident. In the Statement of the Offense, Defendant admitted that his *false statements* to FBI agents and the U.S. Attorney's Office "were made in an attempt to influence the federal grand jury investigation" into the GOTV initiative.  As such, Defendant's false statements are the basis for this violation rendering it irrelevant whether Person One was under subpoena or otherwise legally obligated to speak with investigators.  Indeed, "[o]nly persons conscious of wrongdoing can be said to 'knowingly . . . corruptly persuade.'" *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005). Here, Defendant's conduct satisfies all the elements of violating 18 U.S.C. § 1512(c)(2) because Defendant made false statements to FBI agents and the U.S. Attorney's Office in an attempt to influence the grand jury investigation into the GOTV initiative.

Defendant also argues that the Government has failed to demonstrate that he violated all the elements of an offense under either 18 U.S.C. §§ 1503 or 1512(c)(2) because there was an

insufficient nexus between Defendant's conduct and the grand jury proceeding.  Def.'s Resp. to Govt.'s Mem. in Aid of Sent'g at 6-7.  This argument is without merit.  The Supreme Court of the United States in *United States v. Aguilar*, 515 U.S. 593 (1995), held that simply testifying falsely to an investigating agent with knowledge that a grand jury proceeding had been convened was insufficient to meet the requirements of § 1503.  *Id.* at 601.  Rather, the Court found that the statute requires that "action taken by the accused must be with the intent to influence judicial or grand jury proceedings."  *Id.* at 599.  As the Court explained, "if the defendant lacks *knowledge that his actions are likely to affect the judicial proceeding*, he lacks the requisite intent to obstruct."  *Id.* (emphasis added).  Defendant argues that the nexus requirement would necessitate some additional evidence, for instance, in order to show that the federal investigators were under subpoena to testify before the grand jury.  However, here, Defendant admitted as part of his plea that he was attempting to influence the grand jury investigation when he made the false statements to the FBI agents and the U.S. Attorney's Office.  Given this admission, there is clearly a nexus between Defendant's false statements and the grand jury proceeding.

In sum, the Court concludes that upon consideration of the conduct only set forth within the four corners of the Information to which Defendant pled, his conduct meets all the elements of a violation of § 1512(b)(3).  Moreover, the Court concludes that upon consideration of the conduct set forth in the Information and the Statement of the Offense which Defendant agreed to as part of his plea agreement, Defendant's conduct satisfies all the elements of a violation of 18 U.S.C. § 1503 and of § 1512(c)(2).  Having found that Defendant's conduct meets all the elements of at least three obstruction of justice offenses, 18 U.S.C. §§ 1503, 1512(b)(3), and 1512(c)(2), the Court finds that the cross-reference provision of U.S.S.G. § 2B1.1(c)(3) is applicable because the conduct set forth in the count of conviction establishes an offense specifically covered by the obstruction

of justice guideline (U.S.S.G. § 2J1.2).  As such, the Court, applying U.S.S.G. § 2J1.2(a), finds

that Defendant's base offense level is 14.

## B.     Upward Adjustment for Obstruction of Justice

Turning to the next issue before the Court, the Government argues that the Court should

apply a two-level upward adjustment pursuant to U.S.S.G. § 3C1.1 for obstructing or impeding

the administration of justice.  Pursuant to § 3C1.1,

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or
> impede, the administration of justice with respect to the investigation, prosecution,
> or sentencing of the instant offense of conviction, and (2) the obstructive conduct
> related to (A) the defendant's offense of conviction and any relevant conduct; or
> (B) a closely related offense, increase the offense level by **2** levels.

U.S.S.G. § 3C1.1.  The application notes to the provision provide some specific examples of the

types of conduct to which this adjustment applies.  *Id.* application n.4.  Specifically, the non-

exhaustive list includes "providing a materially false statement to a law enforcement officer that

significantly obstructed or impeded the official investigation or prosecution of the instant offense,"

and "other conduct prohibited by obstruction of justice provisions under Title 18, United States

Code."  *Id.* application n.4(C) & (I).  "'Material' evidence, fact, statement, or information . . .

means evidence, fact, statement, or information that, if believed, would tend to influence or affect

the issue under determination."  *Id.* application n.6.

The Government contends that the Defendant made false statements and engaged in

obstructive behavior after he entered his plea that warrants applying this sentencing enhancement.

Govt.'s Reply Mem. in Aid of Sent'g at 23.  Specifically, the Government asserts that during a

March 7, 2014, debriefing, "[D]efendant continued his obstruction, falsely claiming no

recollection of a $10,000 cash payment made on or about September 17, 2010 to Close Relative,

purportedly for campaign expenses, that the defendant brokered from Thompson through Person

G." *Id.* at 9.  Defendant asserts that his faulty memory regarding the $10,000 cash payment was due to diagnosed memory deficiencies and further argues that the Court should not credit the statements of "Person G" that support the notion that Defendant was involved in the $10,000 cash payment.  Def.'s Resp. to Govt.'s Mem. in Aid of Sent'g at 9-11.  However, the Government contends that Defendant has only proffered evidence regarding the alleged memory deficits from examinations beginning in February 2015, well after the statements at issue were made, and because, in the Government's view, Defendant "did not have any similar failures of recollection when describing other details and sequences of events."  Govt.'s Mem. in Aid of Sent'g at 15.  As such, the Government contends that Defendant's arguments should not be credited.

In sum, the Court is left with two factual disputes between the parties that it shall resolve at sentencing.  The first issue is whether there is sufficient evidence to demonstrate by a preponderance of the evidence that Defendant was involved in the $10,000 cash payment to Close Relative.  *See United States v. Price*, 409 F.3d 436, 444 (D.C. Cir. 2005) (Government "carries the burden of proving any facts that may be relevant in sentencing."); *United States v. Washington*, 115 F.3d 1008, 1010 (D.C. Cir. 1997) ("The burden is on the government to prove facts in support of a sentence enhancement by a preponderance of the evidence.").  If the Court finds that Defendant was involved with the cash payment as the Government alleges, then the second issue the Court must resolve is whether Defendant made false statements in order to willfully obstruct or impede the administration of justice such that U.S.S.G. § 3C1.1 should apply.  Central to this determination will be whether or not Defendant's statements were the result of Defendant's memory deficits as argued by Defendant.  Given that this determination requires the Court to make factual determinations, the Court shall reserve its ruling on these issues until the sentencing hearing.

### C.  Downward Adjustment for Acceptance of Responsibility

Finally, Defendant argues that the Court should apply a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a).  Pursuant to § 3E1.1, "If the defendant clearly demonstrates acceptance of responsibility for his offense, [the court should] decrease the offense level by **2** levels."  *Id.*  Pursuant to the application notes, a court may consider whether a defendant "truthfully admit[ed] the conduct comprising the offense(s) of conviction, and truthfully admit[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable . . . ."  U.S.S.G. § 3E1.1(a) application n.1(A).  While the entry of a guilty plea is "significant evidence of acceptance of responsibility," "this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility."  *Id.* at application n.3.  In determining whether to apply this adjustment, the D.C. Circuit has recognized that "[t]he scope of the district court's wide discretion under section 3E1.1 is not restricted to an evaluation of the defendant's acceptance of responsibility for the narrow offense of conviction and its essential elements."  *United States v. Taylor*, 937 F.2d 676, 680 (D.C. Cir. 1991).

Defendant asserts that he is entitled to the acceptance of responsibility adjustment because he demonstrated public remorse for his actions, including during the plea hearing held in this matter.  Def.'s Resp. to Govt.'s Mem. in Aid of Sent'g at 19, n.6.  The Government contends that Defendant is not entitled to this downward adjustment because he has not "clearly" demonstrated his acceptance of responsibility.  Here, the Government asserts that there are two bases for not applying this adjustment.  First, the Government argues that Defendant's alleged false statements after the plea regarding the $10,000 cash payment warrant the Court declining to include this adjustment in its calculation.  As the Government notes, should the Court apply the upward adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.1 discussed above, the conduct

warranting such an enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a) application n.4. Second, the Government contends that this adjustment should not be applied based on Defendant's "denying and minimizing his series of criminal offenses," even though Defendant entered a plea in this matter. Govt.'s Reply Mem. in Aid of Sent'g at 26. The Government's second argument centers around Defendant's statements during the plea hearing and in his briefing in anticipation of sentencing. *See id.* As such, the Court shall make a factual determination on the record during the sentencing hearing as to whether the Government has established a basis for the Court to decline to apply this adjustment based on the alleged $10,000 payment. The Court also shall determine whether the record reflects that Defendant has otherwise clearly accepted responsibility for his offense such that this adjustment is warranted.

## CONCLUSION

For the foregoing reasons, the Court has determined that in calculating Defendant's base offense level under the U.S. Sentencing Guidelines, the cross-reference provision of U.S.S.G. § 2B1.1(c)(3), is applicable in this instance. The Court further finds that the conduct set forth in the count of conviction establishes obstruction of justice offenses specifically covered by U.S.S.G. § 2J1.2. As such, the Court, applying that guideline, finds that Defendant's base offense level is 14. With respect to the potential upward adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.1 and the potential downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), the Court shall determine at the sentencing hearing: (1) whether there is sufficient evidence to demonstrate by a preponderance of the evidence that Defendant was involved in the $10,000 cash payment to Close Relative; and (2) if so, whether Defendant made false statements in order to willfully obstruct or impede the administration of justice such that

obstruction of justice adjustment should apply and such that acceptance of responsibility adjustment should not apply.  Moreover, the Court shall determine whether the acceptance of responsibility adjustment should otherwise apply because Defendant clearly demonstrates acceptance of responsibility for his offense.  The Court shall render these rulings on the record at the sentencing hearing.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE